Kosior, Appellant, *v.* National Surety Company.

Argued November 15, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Martin Silvert,* for appellant.

*A. S. Longbottom,* of *Bryon, Longbottom, Pape & O'Brien,* for appellee.

OPINION BY PARKER, J., March 3, 1934:

The question involved in this appeal is whether the plaintiff or the defendant shall bear the loss on a certificate of deposit in Northwestern Trust Company occasioned by insolvency of that bank. The facts material to a disposition of the case are not in dispute.

The plaintiff, Agnes Kosior, applied to the defendant for bail bonds in the sum of $1,400 for herself and her brother-in-law who were charged with a misdemeanor. Security being required of her before the service would be furnished, Mrs. Kosior went to the Northwestern Trust Company for the purpose of withdrawing $1,400 in cash and depositing it with the defendant as security. The bank officers then persuaded her to give the defendant a certificate of deposit which would draw interest and volunteered to secure the assent of the defendant. This arrangement being satisfactory to the defendant, the plaintiff secured and delivered to the defendant, by her own hand, a certificate of deposit which was in the following form: "Northwestern Trust Company, Philadelphia, November 6, 1930. No. 67. Certificate of deposit. Northwestern Trust Company has this day received from Agnes Kosior the sum of $1,400 payable in current funds to National Surety Company or assigns on demand with interest at the rate of 4% per annum upon the return of this certificate properly endorsed. Alexander D. Robinson, treasurer. $1,400." The bail having been given was released on November 12, 1930, when the parties were immediately re-arrested and this time held in the sum of $1,200 bail. Being in need of another bond, the original certificate was collected

by the defendant and a new certificate in the sum of $1,200 and otherwise in the same form was held by defendant as security for the second bond and the difference of $200 less the cost of the second bond was given to the plaintiff. In June, 1931, the plaintiff desired a bond for a friend, Peter Brasyski, in the sum of $1,000, and the defendant company agreed to hold the one certificate of deposit for that bond and the bonds then in force. About this same time, the defendant was released from liability on the $1,200 bond. On July 17, 1931, the Northwestern Trust Company, being insolvent, closed its doors, but the defendant was not released from liability on the Brasyski bond until October, 1931. Plaintiff then demanded from the defendant the sum of $1,200, refusing to accept an endorsement of the certificate of deposit held by the defendant, and brought this action in assumpsit.

The plaintiff first contends that defendant was a trustee of a fund of $1,200 placed in its hands, that as such trustee it placed the funds in a bank in its own name and must therefore bear the loss. The Pennsylvania authority relied upon is Com. v. McAlister, 28 Pa. 480, where the court said: "But it is sufficient for the present case to say, that where an administrator or trustee with trust funds in his hands, deposits them in his own name in a bank or other institution which fails, the loss shall fall upon him." This principle has no application to a situation such as exists here, for the plaintiff did not deposit cash with defendant but a certificate of deposit in a bank. It is true that the certificate of deposit was so worded that it could be withdrawn on the endorsement of defendant alone, but the trustee was by the terms of the deposit limited to the right to withdraw the funds when it became necessary to protect itself by reason of a failure upon the part of the plaintiff, or relative, or friend, to comply with the conditions of any of

the bail bonds. The depository was chosen by the plaintiff and the certificate was of a form and tenor dictated by her. The defendant did not mingle plaintiff's money with its own or by placing the money in its own name convert the fund or make it difficult to follow or identify. On the contrary, the fund was earmarked and identified as money coming from plaintiff. We know of no rule of law that would make the defendant, as trustee under the circumstances here present, liable for a loss merely because the trustee had the right to withdraw the fund when necessary to protect itself against loss occasioned by a forfeiture of the bond.

Appellant also urges that the evidence showed that an officer of the defendant had knowledge for a month prior to the failure of Northwestern Trust Company that "it was of doubtful solvency" and negligently permitted the certificate to remain in the bank, and that thereby the defendant became liable for the loss. Passing over the questions as to whether knowledge of one officer of a large insurance company was chargeable to the company and whether in any event the defendant owed a duty to plaintiff to change the form of the security, the evidence will not support appellant's position. To form a basis for this contention the plaintiff called as on cross-examination James C. Whedon, a vice-president of the defendant company, who testified that in June, 1931, some doubt had been cast upon the solvency of some of the smaller banks in Philadelphia and that he himself did not consider accounts in the Northwestern Trust Company "altogether safe." She, however, developed the further fact that this same officer procured the certificate of deposit in June, 1931, endorsed it to her, and asked her to join with the surety company in placing the fund in a larger bank. This she refused to do. This evidence being educed by the plaintiff on cross-ex-

amination and not contradicted, she is bound by it. Under such circumstances she assumed full responsibility for allowing the fund to remain where it was and cannot now charge the defendant with negligence. We are all of the opinion that the case was correctly decided by the court below.

Judgment of the lower court is affirmed.