8     431<br>24 SC ³373

## STANLEY'S APPEAL.

A release by a ward within four months after coming of age, and a subsequent confirmation of the guardianship account and payment of the balance, are no bar to a bill of review to charge the executors of the guardian with an item omitted from the account.

A fund was bequeathed to A. in trust, to invest and pay the interest to B. for

life, and at her death, the principal equally between C., of whom A. was also
appointed guardian, and D. In case of A.'s death before the complete execu-
tion of the trust, the will appointed another person trustee and guardian. On
the death of B., the share of the fund to which C. is entitled is held by A. as
guardian, and he must account for it to the ward.

Investment in bank-stock by a trustee in his own name, though he is expressly
authorized to invest in such stock, renders him personally liable for the amount
invested.

APPEAL from the Orphans' Court of Dauphin county.

This was a petition of review, in the Orphans' Court, to open and
surcharge an account settled by a deceased guardian. The peti-
tion set forth that in 1825 General Stanley, the guardian of the
petitioner, had received $400 from her father's estate, pursuant to
the directions of the will, which sum was omitted from the account
settled by him as guardian.

The defendants, executors of Stanley, set up that the money so
received had been invested in certain bank-stock, pursuant to the
directions of the will, which the executors had sold, believing it
best for all concerned; and they offered to pay over the proceeds
of the sale, or to purchase so many shares of the same stock as
would at the par value be equal to the sum so received.

They further set up a settlement of the guardianship accounts,
October 7, 1843, after petitioner attained her majority, which was
confirmed by the court; and a release by her, reciting payment in
full of the amount received by him. The petitioner replied that
the release was obtained from her within four months after she
came of age; and that she was not informed of the receipt of this
fund until some time afterwards, when a receipt for it was disco-
vered among the papers of her father's executors. And it was
proved that the release was executed shortly after the account was
filed, and before confirmation by the court.

It appeared from the auditor's report, that, by the will of peti-
tioner's father, $400 was directed to be paid to Stanley, who was
also appointed guardian of the petitioner, to be invested in mort-
gage security or bank-stock, the interest to be paid to testator's
mother for life, and then to pass with the residuum, which was
bequeathed equally to the petitioner and testator's widow.

This sum was paid by the executor to Stanley in 1825. In
April, 1839, he purchased thirty shares of Schuykill Bank stock,
*in his own name*, at a price above $50 per share. But there was
no stock purchased or held by him as trustee. In 1839 the bank
became insolvent, and the shares inventoried as part of his estate
were sold by his executors, June 20th, 1845, at $7.75 per share.

Stanley, the guardian, died on the 15th June, 1844. In February, 1845, the petitioner wrote to his executors, requesting information respecting the affairs of her uncle, and that the certificates of Schuylkill Bank stock should be forwarded to her. She added, that this stock had been purchased with the money above referred to. The auditor further reported that it did not appear when she was informed this investment had been made, whether before or after the failure of the bank. That, under the circumstances, the investment was not made in such a manner as to bind the parties interested, and he therefore charged the executors with the shares of the $400 due to the ward, with interest from the death of the legatee, for life.

In the auditor's report there was nothing said respecting the release, &c. The case, therefore, seemed to stand upon the naked facts of a release, shortly after the ward attaining majority, before decree; payment of the balance of the account as settled; and the acknowledged omission of the amount from the guardianship account.

A question was raised in this court as to the form of the proceeding.

Testator, by his will, directed the investment of this fund; that if Stanley died before the trusts vested in him were fully executed, McCaumon should be guardian of his daughter and trustee of the fund; and in the event of his death, the Orphans' Court of Chester county should appoint a person in his place, with like authority.

But it was proved that Stanley survived the legatee for life, upwards of three years.

*Alricks*, for the appellants.—The fund being in the hands of Stanley as trustee, he was liable to account only to the trustee to be appointed under the will. As this proceeding did not affect the other *cestui que trust*, his estate will still be liable to such a proceeding.

But the case is within the saving clause of the act of 1840, for the balance of the account was paid over, and there was a release executed: 6 W. 159; 2 Barr, 432.

The court declined hearing *Harris*, contrà.

*July* 3. GIBSON, C. J.—The ward's release, executed as it was within less than four months after she had attained the age of twenty-one, is to be laid out of the case. It has often been ruled, and particularly in Lukens's Appeal, 7 W. & S. 48, that

releases given in the dark, and before emancipation from habits of confidence and control, are to be disregarded.    And the rule is not only a wholesome, but an indispensable one.    I have never known such a release to be set up for any other purpose than to shield the guardian from an investigation that would disclose something which it was his interest to conceal; and for the very reason that if justice had been on his side, he would not have needed it. It may be properly used when vouchers have been lost by lapse of time, but not to cover up recent transactions, except where it is pleaded by an executor who is bound to set it up for what it is worth. How then does the case stand on its merits ?

That General Stanley received $400 from the executors, in trust to apply the interest to the maintenance of the testator's widow, and to pay the principal to the residuary legatees at her death; and that he did not charge himself with his ward's portion of it in his guardianship account, are facts which are admitted in the answer to the bill.    But it is insisted that, as the money was in his hands, not as a guardian, but as a trustee, it was not a proper subject of the guardianship account.    The parties ultimately entitled to the fund, however, might waive the benefit of a trustee account, and, the trust being executed, treat him as the *primâ facie* holder of the whole sum.    Strictly speaking, none but the executor or administrator of the *cestui que trust*, could make him show how he had discharged his stewardship.    For what purpose but to burthen the fund with costs and charges, settle such an account ?    A sum of money had been put into his hands to maintain the widow with the interest of it, and the presumption is that the principal was undiminished at her death; but if any part of it had been lost by any other means than his own mismanagement, it was his business, unasked, to settle an account as a trustee, in order to give the residuary legatees an opportunity to contest the matter with him in open court.    Having thought proper to do otherwise, he surely cannot set up his own default as a bar to the complainant's bill to charge him in his guardianship account, in which due allowances may be made him with equal convenience and effect.    In Jacobs v. Bull, 1 Watts, 370, it was held, in substance, that money shall be taken to be in the hands of an executor or trustee, where the offices are concurrent, in the one character or the other, as may better serve the purposes of justice.

The fund was invested in shares of Schuylkill Bank stock purchased and standing in the guardian's name, which have greatly fallen in value; yet the appellant insists that the ward shall take

them in specie at the price paid for them. If the guardian thought they were the property of the ward, it is singular that he said nothing about them when he paid her the balance due on the guardianship account and took a release from all further responsibility. His silence on that head leads to a conclusion that he viewed them as his own; and if they were so then, they are a part of his estate now. But whether he did so or not, it is conclusive that he purchased them in his own name. The fact that he retained the power to make them his own, if the investment should prove to be a valuable one, estops his executor from denying that he purchased them in his own right. This elementary principle—applicable to every investment by a trustee—is essentially that which forbids him to place trust-money in the hands of a banker in his own name, except at the risk of the banker's insolvency, or in any other way to confound it with his own; and it was this that ruled the case of Lukens's Appeal, in which the ward had not only released the guardian, but had actually received a transfer of the depreciated stock at the price the guardian had paid for it, who, nevertheless, was held to make the difference good. That is a stronger case than the present, besides being an authority to show that the request of the ward to have the certificates transmitted to her, is not a circumstance to conclude her. She had been left in ignorance of the state of her property in her guardian's hands; and the very letter which contained that request, contained another for information. In this state of ignorance and doubt, nothing said by her would bind her. Perhaps even an agreement to take the shares, without a subsequent consideration to found it, might be rescinded by her before execution of it. There has been no delay in the prosecution of her claim; and she asks no more than to exercise her undoubted right, to receive a transfer of the shares, or surcharge the guardianship account at her election. She has chosen to do the latter, and we have neither the power nor the will to prevent her.

Decree affirmed.