# Fahnestock's Appeal.

1. The finding of an Auditor is entitled to great weight, and will not be set aside except for plain mistake.

2. Where the conclusions of an Auditor and of the court below are widely different, the Supreme Court, while giving the Auditor's report that weight to which it is entitled in itself, will determine which view of the case best accords with the facts exhibited in the proof, and the law as declared in similar cases.

3. The measure of diligence and care required on the part of a trustee is that which a man of ordinary prudence would practice in the care of his own estate. A reasonable degree of vigilance, and the exercise of good faith, is the standard of his duty.

4. Where a trustee, acting in good faith, and in the exercise of his discretion retains securities which come to his hands, from a former trustee, as assets of the trust estate, the fact that such securities depreciate in value, and under his management cause loss to the estate, is not a sufficient reason for surcharging the trustee; nor will he, on that account, be deprived of his compensation for services, or of reimbursement for expenses incurred by him as trustee.

May 30th 1883.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

CERTIORARI to, and appeal from the Court of Common Pleas of *Adams county* : Of May Term 1883, No. 30.

Appeal by Edward G. Fahnestock, from a decree of said court, reversing the findings and award of an Auditor, appointed to pass upon exceptions filed to the final account of said Edward G. Fahnestock as successor to Benjamin Deford, trustee under the will of Joseph Baugher, deceased.

Before the Auditor, William A. Duncan, Esquire, the following facts appeared :   Joseph Baugher died in April 1849, leaving to survive him his widow Elizabeth, and two daughters, viz.: Mrs. Annie M. Baker and Mrs. Caroline Heiner.   By his will, dated February 5th 1849, which was duly proved, he devised and bequeathed to his widow, one-third of his real estate for life and one-third of his personal property absolutely ; and the rest of his estate of all kinds to Benjamin Deford, in trust for his two daughters for life, with a limitation over to their children.   In accordance with the directions of the will, Deford sold the real estate, which consisted of, first, the home farm, which was bought by Sanford Schroder, a step son of the testator for $4,000, and, second, another tract of land, which was bought by J. F. Schroder, also a step son, for $3,250.   The widow's dower was secured by a mortgage of $2,416.66, on the first mentioned property.   The widow died in 1853.

In 1866 Deford filed his final account, which was duly confirmed, and he resigned as trustee, whereupon Edward G. Fahnestock was appointed in his place, on August 20th of the same year, and received the following money and securities as the corpus of the trust:

| | | | |
|---|---|---|---|
| Mortgage—Sanford Schroder . | . | . | $2,416.66 |
| Note—Samuel Fahnestock | . | . | 5,200.00 |
| Three months' interest . | . | . | 78.00 |
| Check—Benjamin Deford . | · | . | 2,282.89 |

$9,977.55

One-half of this sum or $4,988.78, he held as trustee for Annie M. Baker.   During Deford's administration of the trust, the interest on the Sanford mortgage had not been promptly paid, and in November 1865, suit was begun thereon, but the action was not prosecuted to execution and sale at that time, and when Fahnestock was appointed trustee the interest was little, if any, in arrear.   Afterwards, however, default was made in its payment ; but the trustee considered the investment entirely safe and allowed the arrears to accumulate, until, in 1877, they amounted to about $580, when an alias writ was issued and judgment taken by default for $2,996.60, being the

amount of the principal of the mortgage and the accrued interest. In pursuance of this judgment the property was sold at sheriff's sale and bought in by the trustee, on April 14th 1877, for $2,000.

On April 17th 1882, Fahnestock filed his account as trustee, in which he claimed, inter alia, the following credits : certain rents paid by him to Annie M. Baker; certain portions of the corpus of the fund paid on her order; the sum of. $208.33, being one-half of the loss on the above mortgage ; the sum of $1,000, invested in the premises bought at sheriff's sale ; the expenses of the sale ; taxes; repairs, and $400 as his allowance for compensation. The balance in his hands as trustee, after deducting these credits, was $1,713.08.

To this account Annie M. Baker filed exceptions relating to the credits, and alleging, inter alia, that the loss on the mortgage was occasioned by the negligence of the trustee, and that he was therefore liable for the same, and for the costs and expenses incident thereto.

The Auditor dismissed all the exceptions, save the one as to the trustee's compensation, which he reduced to $217.70, afterwards adding $50, for expenses, making a gross balance of $1,847.68, which, after deducting $62.22 for the expenses of the audit, left a net balance of $1,785.46. The Auditor also found that the trustee was not guilty of gross negligence in his management of the trust, but that he had acted in good faith, and therefore should not be charged with the losses or deprived of his compensation.

To these findings of the auditor Mrs. Baker excepted, and the court, McLean, P. J., delivering the opinion, sustained the exceptions as to the said credits, compensation and expenses, finding the trustee guilty of gross negligence, depriving him of his compensation and restating his account, so as to exhibit. a balance due by him of $5,001.46. The court further entered a decree ordering the trustee to pay over this amount to his successor in the trust and to pay the cost of the audit.

Thereupon Fahnestock took this appeal, assigning for error the rulings and decree of the court.

*David Wills*, for appellant.—The auditor, as was his duty, reported facts and not evidence ; and the evidence taken before the Auditor was not properly before the court. It was not brought up by any special order on affidavit and rule, nor on any cause shown: Stilwell's Estate, 8 Phila. R. 178 ; O'Kane's Estate, 1 W. N. C. 416 ; Quinn's Estate, Id. 9 ; McMullen's Estate, Id. 415. An Auditor's report upon the facts has the weight of a verdict, and will only be set aside upon ground which would be sufficient for the granting of a new trial at

[Fahnestock's Appeal.]

common law: Hottenstein's Appeal, 2 Gr. 301 ; Harris' Appeal, Id. 304, or where there is flagrant mistake : Miller's Appeal, 6 Casey 478 ; Mengas' Appeal, 7 Harris 221 ; Brua's Appeal, 5 P. F. S. 294; and this, although the court upon an examination of the evidence returned, may have come to a different conclusion : Yohe's Appeal, 5 P. F. S. 121 ; Dellinger's Appeal, 21 P. F. S. 425 ; Gilbert's Appeal, 28 P. F. S. 266 ; Bedell's Appeal, 6 N. 510. The law requires from a trustee a reasonable degree of diligence, exercised in good faith, such as a prudent man would use in the case of his own estate. He is not liable for unavoidable loss : Jones' Appeal, 8 W. & S. 143 ; Johnson's Appeal, 12 S. & R. 317; Stem's Appeal, 5 Wh. 472 ; Eyster's Appeal, 4 H. 372 ; Jack's Appeal, 13 N. 367. A trustee should not be deprived of his compensation for mere error of judgment. Every presumption is in favor of his having acted honestly : Myer's Appeal, 12 Sm. 104 ; Brennan's Estate, 15 P. F. S. 16.

*Edward J. Cox* and *J. C. Neely*, for appellee.—The court does not set aside the Auditor's findings of facts as such, but his conclusions therefrom. The loss arising from the trustee's negligence should be made good by him : Hill on Trustees, pp. 447, 374, note 2, 281, 368, 379 ; Long's Estate, 6 W. 46 ; Johnston's Estate, 9 W. & S. 107 ; Jack's Appeal, 13 Norris 367 ; Charlton's Appeal, 10 Casey 473. Compensation is allowed trustees for faithful execution of the trust. Sloth, ignorance, delay, misconduct, by which the interests of the trust are impaired, will prevent the recovery of commissions: Stehman's Appeal, 5 Barr 413 ; McCahan's Appeal, 7 Barr 56 ; Holman's Appeal, 12 Harris 174. Negligence, although arising from kind feelings, will occasion loss of commissions : Smith's Appeal, 11 Wright 424.

Mr. Justice CLARK delivered the opinion of the court, October 3d 1883.

The Auditor, upon a review of this case, finds that there is no evidence of any willful default or bad faith on the part of Edward G. Fahnestock, the trustee, and that the charge of gross negligence is not made out.

The finding of an Auditor is entitled to great consideration, and will not be set aside, except for plain mistake ; when this is shown, as we have said in Chew's Appeal, 9 Wright 230, " like all other judicial proceedings, it is subject to correction." Additional force is given to an Auditor's report by the confirmation of the court : Bull's Appeal, 12 Harris 286 ; Dellinger's Appeal, 21 P. F. S. 425. The finding of an Auditor upon the

8 OUTERBRIDGE.—4

facts, which has been approved by the court below, will not be disturbed on appeal, except for flagrant error : Gilbert's Appeal, 78 Penn. St. 266. On the other hand, it must necessarily have less weight, when that confirmation or approval is refused : Bachman's Appeal, 38 Leg. Int. 393.

In the present case the Auditor and the court have arrived at widely different conclusions, and therefore it is our duty, giving the report of the Auditor that weight to which it is in itself entitled, to determine which view of the case best accords with the facts exhibited in the proof, and the law as declared in similar cases.

At the time of the appointment of Edward G. Fahnestock, as successor to Benjamin Deford, in the trust, under the will of Joseph Baugher, deceased, the real estate had all been sold, according to the directions of the will, and the entire trust fund and property consisted of the following, viz :

| | | |
|---|---|---|
| Mortgage—Sanford Schroder | . . | $2,416.66 |
| Note—Samuel Fahnestock . | . . | 5,200.00 |
| Three months' interest | . . . | 78.00 |
| Check—Benjamin Deford . | . . | 2,282.89 |
| | | |
| Total . . | | $9,977.55 |

These were the assets which actually came into Fahnestock's hands, as trustee; one-half of this was held by him in trust for Annie M. Baker, the other half for Caroline Heiner, under the terms and conditions of the will. The principal of the trust fund, being thus already invested, no duty of speedy collection or disbursement devolved upon the trustee ; what was more desirable was a secure and continuous investment. If the investments, already made, were in his judgment safe and secure, it was his duty, under the circumstances, to leave them undisturbed.

The mortgage of $2,416.66 was the first lien upon the mansion or home farm of Joseph Baugher, deceased, containing 155 acres, for which Schroder, the mortgagor, had paid at public sale $4,000. This certainly seemed an ample security for the indebtedness, such as a careful and prudent man would have considered good, and we think the trustee was right in accepting the assignment as a safe investment. It is true, Schroder had not been very prompt in the payment of interest, but he was then but little, if any, in arrear. After Mr. Fahnestock's appointment, however, the interest was not so promptly paid, and in 1877, when judgment was taken on the mortgage, the arrears of interest were $580. Schroder was a half brother of Mrs. Baker and Mrs. Heiner, being a son of the widow of Joseph Baugher, deceased, by a previous marriage. The trustee testifies that he was induced by the exceptant, Mrs.

Baker, not to enforce prompt payment of the interest by Schroder; this Mrs. Baker denies. The Auditor says, "the denial is as emphatic and positive as the trustee's assertion—a flat contradiction," and without passing on this disputed matter, he finds that "the trustee suffered the unpaid interest to accumulate, upon the honest belief that it was safe and in no danger of loss."

In the spring of 1877, Sanford Schroder made an assignment for creditors, and the farm was at that time appraised at the sum of $3,000. The decrease in the valuation seems to have been the result of a general depreciation in real estate prior to 1877, attributable perhaps to the effect of the panic of 1873. It appears from the testimony, and the Auditor so finds, that the trustee inquired, from time to time, of those residing in the neighborhood of this farm, and that they fixed the value at about $3,000, and that from information thus received he was satisfied it was safe. After obtaining judgment upon his mortgage, Fahnestock proceeded against the land, and on the 14th April 1877, purchased it at sheriff's sale, as trustee, at the sum of $2,000. From that time he held the land as part of the trust estate, receiving the rents, paying for repairs, taxes, &c. We are of opinion that the Auditor was right in determining that there was no evidence of willful default, or mala fides ; and that, in view of the positive testimony, showing that the trustee made frequent inquiries and received estimates of the neighbors, satisfying him that the trust was safe, "and that he acted, or rather rested in this belief," the charge of gross or supine negligence was not made out.

The purchase of the land at the sheriff's sale, under the circumstances, was compulsory. If he could, by reasonable diligence, have known the actual depreciation earlier, and brought the land upon the market sooner, better results might probably have been obtained ; but it is a fact, known to all, that there is no article of commerce which admits of as varied and uncertain judgment, as to value, even among the well-informed, as real estate. There are so many elements or factors entering into a proper estimate, matters present and prospective, that a correct judgment is with difficulty formed. We are of opinion that this trustee acted in good faith, and that he should not be charged with interest on the mortgage debt beyond what he received. We think he should be held to account on the footing of his repurchase of the land for the benefit of the trust estate, and that therefore the costs of the levari facias, the taxes and repairs, the loss upon the mortgage debt, together with the amount invested in the purchase at the sheriff's sale, are proper credits in his account. We are of opinion also that

[Fahnestock's Appeal.]

he is entitled to commissions at the rate fixed in the will, and to reasonable expenses.

The measure of diligence and care required of a trustee, is precisely that which a man of ordinary prudence would practice in the care of his own estate. This rule has been so often laid down in our books that it seems unnecessary to refer to any authorities on that point. A reasonable degree of vigilance and the exercise of good faith is the standard of the trustee's duty. The office is often a thankless one, and if, as we said in Eyster's Appeal, 4 Harris 372, guardians or trustees " are to be held responsible for all negligence, and are not allowed the exercise of a reasonable discretion and prudential care in the management of their trusts, it will deter prudent men from assuming the office, which in itself is sufficiently onerous and already undertaken by such men with reluctance."

This practically disposes of all the matters covered by the exceptions or which were submitted to the judgment of the Auditor. The court below, however, in the opinion and decree filed, took up other matters not in issue before the Auditor, and therefore, not referred to by him in his report, and these constituted the main features of the opinion of the court in the discussion of the question of the trustee's liability. The court held the trustee liable for certain portions of the principal which it is alleged and stated in the account were paid over, with the interest, by the trustee to Anna M. Baker, the exceptant, under " an agreement." As these payments of principal were not excepted to, were not examined nor considered by the Auditor were not embraced in the exceptions to his report, we cannot see how they became matters proper for adjudication. " The agreement " referred to, is not produced or shown in evidence; the " bond and release " are not before us; no testimony was taken on that subject. We are necessarily confined in our investigation of the case to the issue distinctly presented. It may be that this application of the principal of the trust was an improper one, but we can only determine that question when it comes regularly before us.

The decree is therefore reversed, the report of the auditor confirmed and it is ordered that the appellee shall pay the costs of this appeal.