# In re Estate of Mary E. Noble, Minor.   Appeal of James H. Irwin.

*Guardian and ward—Investment.*

Where a guardian mingles his ward's moneys so that it is impossible to trace investments he will be surcharged with interest on the principal, and it may be compounded on the surplus income, and his claims for commissions may be reduced.

Where a guardian mingles his ward's moneys with his own the doctrine of rests is inapplicable, and he will not be exempt from the payment of interest for the first six months during which he has held the trust fund.

Argued Oct. 30, 1896.   Appeal, No. 101, Oct. T., 1896, by James H. Irwin from decree of O. C. Allegheny Co., Feb. T., 1896, No. 48, surcharging him as guardian.   Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Exceptions to guardian's account.

From the record it appeared that J. H. Irwin was appointed guardian of the minor children of John Noble, deceased, on March 22, 1884.   One of these minors, Mary E. Noble, arrived at her majority October 2, 1895, and on January 3, 1896, appellant filed his account as her guardian.   The estate of the ward consisted of $5,000 paid appellant July 7, 1884, and $2,290 paid him February 4, 1886.   The guardian testified that he had invested the funds, with moneys of his own, in six per cent mortgages.

A mortgage known as the Kirkpatrick mortgage, for $3,720, assigned to the ward in the year 1888, was paid May 15, 1895, and another, known as the Creese mortgage, was assigned and foreclosed shortly after its assignment, and the real estate covered thereby purchased by the appellant.

When the minor arrived at full age she was given option to take this property at $200 less than cost to the guardian, or the amount of her mortgage, and she chose the latter.

There was no proof or allegation that the guardian had in any way derived any personal benefit or advantage from the custody or use of the ward's money, but, on the contrary, his

testimony was that the purchase of the Creese farm was a loss to him, and he had in his account charged himself with more interest than he received.

After deducting therefrom attorney's fees, moneys paid for maintenance, costs of appointment and accountants' commissions, the guardian charged himself with interest on the $5,000 paid him July 7, 1884, and the $2,920 paid February 4, 1886, from six months after the receipt thereof, until October 21, 1895, when the appellee arrived at full age, deducting from the interest total the sum of $111, interest on the Kirkpatrick mortgage for $3,720, paid May 15, 1895, and held uninvested until the ward's majority.

HAWKINS, P. J., filed the following opinion:

1. It is essential to the safe and orderly administration of trusts, not only that investments should be in the securities prescribed by law, but that a visible impress of the trust should be stamped upon them, for the obvious reason that every departure from the prescribed course must give enlarged scope to incompetency and rascality, and gratuitously introduce an element of hazard and uncertainty, which must add complication to settlement, and impose unnecessary burden upon the cestui que trust. Investments in the mode prescribed by law imply safety and furnish a ready means of settlement; whereas mingling trustee's individual money with the trust funds always raises embarrassing difficulties in tracing them. In many cases, such as investment in trade, or in speculation, these difficulties are insurmountable; in all of them the cestui que trust is put at the disadvantage of making investigation; the assets are subjected to the risk of reprisal by the trustee's creditors ; and the trustee is afforded the opportunity of shifting the burden in the event of loss from himself to the trust. This result is in no sense chargeable to the cestui qui trust, for he has no option in the matter, but to the gratuitous act of the trustee outside of the course prescribed by law. A rule applicable to the administration of every trust is that any departure from the ordinary course is at the trustee's risk. The policy of the law is to insure safety, facilitate investigation, and take away from the trustee, as far as possible, the opportunity of abuse. The cestui qui trust may repudiate an unauthorized investment, or elect between

profits realized in trade and interest. So on the same principle a bailiff who takes a note or an executor who deposits trust fund in his own name may be held personally responsible: McAllister v. Com., 30 Pa. 536. But where the identity of the fund has been lost by a breach of trust, even the opportunity of election is taken from the cestui que trust. A confusion of goods has taken place, and conversion by the trustee to his own use implied. Such investments were characterized in Morris v. Wallace, 3 Pa. 319, as a "legal fraud, liable to all the consequences as such, without regard to the intention, the integrity of the trustee, or the honesty and good faith of the particular transaction," and bear interest from the time of conversion. The present guardian brought himself within the reason of this rule; he admittedly mingled the trust fund with his own. True, he claims to have invested them; but he is unable to produce the securities, or show when the investments were made. The cestui que trust is thus deprived of even the opportunity of election, and is forced to treat the trustee as having assumed the added character of debtor with its incidents. The doctrine of rests, if it be not obsolete, can have no application to such a case, for it is predicated of the fact that no interest had been earned. The evidence here fails to show whether or not interest had been earned; if it was in fact, the cestui que trust was entitled to it and ought not to suffer from the uncertainty resulting from the fault of her trustee: Landis v. Scott, 32 Pa. 503. The six months' rule of rests invoked by accountant grew out of the circumstances of its time, but is inapplicable in the present, even in cases of legal investment. "The time," said Mr. Justice WOODWARD, in Witmer's Appeal, 87 Pa. 120, "should be such as the circumstances of each particular case would show to be reasonable;" and was there fixed at two months. But in view of the facility with which trust funds may now be deposited at interest until permanent investment can be had, it is at least questionable whether rests in the ordinary sense should be allowed at all. Because this particular trustee is pecuniarily responsible is no reason why he should escape liability for interest. His cestui que trust was entitled to the securities prescribed by law as well as the personal responsibility of her trustee, and to the enjoyment of the earning power of the trust estate. His escape will not only work injustice to

her, but " will be taken for a precedent " which will encourage the already too prevalent and hurtful idea that trustees may convert trust assets to their own use.

2. The complaint made by accountant that he should have been credited with commission on the principal as of the day of its receipt has no merit. Such compensation is made for active services and responsibility in collection and investment; while here the guardian's services were formal in character. The services required were mainly legal, and for these his attorney has been liberally paid ; and the funds when received by the trustee were not invested in the mode prescribed by law, but mingled with his own: Landis v. Scott, supra. No question was suggested as to the sufficiency of the compensation.

3. Nor has accountant reason to complain that interest was compounded on surplus income. The expenditures which he was authorized to make were fixed by order of court; and rests of three years each were allowed on the income which was not required for that purpose. Had this surplus been realized on authorized securities, good management would have suggested that it should have been invested, rather than allowed to have lain dead; but when it is considered that this surplus fund was mingled with the guardian's own fund it must be presumed he had the benefit of it, and should account.

4. There was no reason why this accountant should not have returned the admitted balance in his hands after his ward reached her majority; and if, as is clear, she was entitled to it, but was deprived of its use, the guardian should in justice make her compensation.

The practice of retention of funds ought, on account of the temptation to use them as an instrument of coercion, to be discouraged if not prohibited. There have been cases in which dependent and helpless relatives have been forced by their necessities to acquiesce in rank injustice. In most cases the fraudulent purpose is incapable of direct proof; and the obvious remedy is to take away the temptation.

The court entered a decree in accordance with the opinion.

*Error assigned* was decree of the court.

*John O. Petty*, with him *Kennedy T. Friend*, for appellant.— If the guardian is to be treated as holding the character of a

debtor with its incidents, we submit he cannot be so treated until an investment is actually made in his own name, and he should not be charged with interest as of prior date, as was done here: Landis v. Scott, 32 Pa. 503; Merrick's Est., 1 Ash. 205; Worrell's App., 23 Pa. 50; Huffer's App., 2 Grant, 341; Witmer's App., 87 Pa. 123.

The guardian could not know in advance what the actual expenditures during the coming year would be, and therefore he should be allowed to retain a reasonable sum for contingencies, according to the rule adopted by the auditor, recognized by the court below, and approved by this court in Norris' App., 71 Pa. 106.

In the absence of proof that the trustee made profit out of the income, the rule is, that he must be charged only with what he ought to have made: Lukens' App., 47 Pa. 356.

The commissions are due when earned, or at the time the services were rendered: Say's Executors v. Barnes, 4 S. & R. 116; Callaghan v. Hall, 1 S. & R. 241.

Interest cannot be allowed on interest: Norris' App., 71 Pa. 123; Hughes' App., 53 Pa. 500; Harland's Account, 5 Rawle, 323; Springer's Est., 51 Pa. 342; Dietterick v. Heft, 5 Pa. 87; Pennypacker's App., 41 Pa. 494; Biles' App., 24 Pa. 335; Robinett's App., 36 Pa. 174; Foltz's App., 55 Pa. 428.

*Edward F. Hays*, with him *Thomas A. Noble*, for appellee.— When a guardian, instead of investing his ward's money in securities approved by law, uses a portion of it in his own business, or so mingles the same with his own that it is impossible to trace investments, he will be properly surcharged with interest, and the court would be justified in rejecting his entire claim for commission: Mulholland's Est., 175 Pa. 411; Say's Executors v. Barnes, 4 S. & R. 112; Copenheffer's App., 3 Penny. 243; Yoder's App., 45 Pa. 394; Hughes' Minors' App., 53 Pa. 500; Luken's App., 7 W. & S. 48.

PER CURIAM, November 11, 1896:

There is nothing in this record that would justify us in sustaining either of the assignments of error. The questions involved have been fully considered and correctly disposed of by the learned president of the court below; and on his opinion the decree is affirmed and appeal dismissed at appellant's costs.