## Carr's Estate (No. 1).

*Trusts and trustees—Investment by trustee in his own name—Surcharge.*

Whenever a trustee, charged with the duty of investing money belonging to and for the benefit of another, invests it in such a way as to make it possible for him to profit by the investment individually, he makes himself personally liable for any loss which may occur by reason of said investment.

Where a trustee invests money of the trust estate in a mortgage which he takes in his own name and subsequently in foreclosure proceedings buys in the mortgaged property, and takes title in his own name, the cestui que trust may elect either to take the property, or require at the hands of the trustee the amount of the money invested, with interest thereon.

*Trusts and trustees—Delay in collecting debt—Surcharge.*

Where a testamentary trustee permits a note given by an attorney to the testatrix, who is also the attorney of the trustee to remain uncollected for ten years, the trustee will be surcharged with the amount of the note.

*Trusts and trustees—Surcharge—Costs.*

Where a trustee invests trust funds in his own name and delays collecting a debt due the trust estate for many years and until the debtor becomes insolvent, the trustee will be charged with the costs of the audits of his account.

Argued Nov. 17, 1903. Appeal, No. 53, Oct. T., 1903, by

Samuel T. Carr, from decree of O. C. Delaware Co., dismissing exceptions to auditor's report in estate of Charlotte Louisa Carr, deceased. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Exceptions to report of J. M. Shanafelt, Esq., auditor.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was in dismissing exceptions to auditor's report.

*A. B. Geary*, for appellants.—It is the duty of an executor or trustee to collect an amount loaned by the decedent on personal security. Failure to collect the amount within a reasonable time is negligence which will make the trustee liable, and ten years is not a reasonable time: Bullock v. Wheatley, 1 Collyer's Chancery Reports, 130; Powell v. Evans, 5 Vesey, 839; Holcomb v. Coryell, 11 N. J. Eq. (3 Stockton) 476; Hill's App., Pitts. Leg. Jour., 14 N. S. 375 (31 O. S.); Wills's Appeal, 22 Pa. 325; Shaffer's App., 46 Pa. 131; Gardner's Est., 199 Pa. 524.

An executor or trustee will be surcharged if, in making investments, he deviates from the path laid down by law, and advice of counsel will be no excuse: Bullock v. Wheatley, 1 Collyer's Chancery Rep. 130; Powell v. Evans, 5 Vesey, 839; Baer's App., 127 Pa. 360; Frankenfield's App., 11 W. N. C. 373; 127 Pa. 369.

A trustee or person acting in a fiduciary capacity who invests trust funds and takes the securities for the same in his name individually, is liable for the amount: Lukens's Appeal, 7 W. & S. 48; Morris v. Wallace, 3 Pa. 319; Dietterich v. Heft, 5 Pa. 87; Stanley's Appeal, 8 Pa. 431; Royer's Appeal, 11 Pa. 36; Commonwealth v. McAlister, 28 Pa. 480; McAlister v. Commonwealth, 30 Pa. 536; Noble's Estate, Irwin's App., 178 Pa. 460.

If the conduct of a trustee make a reference to an auditor necessary he should pay the costs: Morrison's Estate, 196 Pa. 80; Shearman v. Morrison, 149 Pa. 386.

*A. Lewis Smith* and *Alfred J. Wilkinson*, for appellee, cited: Stem's App., 5 Wharton, 472; Fahnestock's App., 104 Pa. 46.

OPINION BY BEAVER, J., March 14, 1904:

Charlotte Louisa Carr, of the county of Delaware, died October 12, 1883, testate.  The principal item of her will is as follows: " I give and bequeath the interest and income of my moneys at interest, bonds and mortgages, to Samuel T. Carr during his natural life; and, at his death, I give and bequeath the said interest and income to the three children of the said Samuel T. Carr, to be equally divided among them, during their natural lives, and, at the death of each of them severally, I give and bequeath the one-third of the principal sum to the children of the ones so dying, to be equally divided among them, the children of any deceased child taking the parent's share.  If any of the said three children of the said Samuel T. Carr shall not leave living descendants, then I give and bequeath the share that would have gone to such descendants to the descendants of the one or ones of the said three children who do leave living descendants at death and, if none of the said three children should leave living descendants at death, then I give and bequeath the said principal sum to the next of kin of the said three children."  Benjamin E. Moore was named in the will as the executor thereof.

Within a year after the death of the testatrix the executor filed an account, which was duly confirmed, showing a balance due the estate in his hands of $4,577.24.  This balance was made up of $4,000 in bonds and mortgages, $200, of a certificate of deposit or promissory note taken by the testatrix, and $377.24 in cash.

1. The principal of one of the mortgages for $2,000, having been paid to the executor, was invested by him, on the 23d of September, 1884, in a mortgage of William Lewis upon the same property covered by the mortgage which had been paid; but, instead of having the new mortgage taken to himself as executor or trustee, he took it in his individual name.  It was so held until January 6, 1896, when the sheriff of Delaware county, under foreclosure proceedings, conveyed the same to Benjamin E. Moore, his heirs and assigns.  He not only took the title but continued to hold it in his own name, until cited to file an account, when, on May 19, 1902, he executed a declaration of trust, in which he declared that the interest upon the said mortgage which accrued from the date thereof to

September 23, 1893, was collected by him and accounted for and paid over to Samuel T. Carr, the cestui que trust for life under the will of said decedent, and receipted for by him as interest on the said bond and mortgage; reciting further that "Default having been made in the payment of interest on said bond and mortgage, the said mortgage was afterwards foreclosed and the premises therein and hereinbefore described were exposed to public sale and, not producing the amount of the debt secured in said mortgage, were purchased by the said Benjamin E. Moore for the benefit of the said trust estate and were conveyed to him, his heirs and assigns, by Elwood T. Carr, then high sheriff of the said county of Delaware," etc. And further that "whereas the said Benjamin E. Moore, not having been able to resell the said premises, had been advised by counsel that for the protection of said trust estate he should execute this present declaration."

Having invested the money of the estate in his own name and having taken a mortgage to himself which he held in that way for ten years, having purchased the property at sheriff's sale and having held it as his individual estate for six years thereafter and until cited to file his account, was he personally liable for the amount so invested, with interest thereon?

The auditor, appointed to pass upon exceptions to his account, reported that he was not individually liable and his report was, in that respect, confirmed by the court.

Was he liable and should he be surcharged with the amount of the said mortgage and the interest thereon from the last payment thereon in 1893? We think he was.

A fair general rule, based upon many adjudicated cases in Pennsylvania and upon the principles of good faith and fair dealing which ought to govern in the management of trust estates may be stated as follows: Whenever a trustee, charged with the duty of investing money belonging to and for the benefit of another, invests it in such a way as to make it possible for him to profit by the investment individually, he makes himself personally liable for any loss which may occur by reason of said investment.

In Royer's Appeal, 11 Pa. 36, Mr. Justice COULTER, in delivering the opinion of the court, said: "As the guardian took the deed in his own name, we may presume that, if the

land had appreciated in value and turned out a good specula-
tion, we should not have been troubled with this dispute.    But,
as it has now depreciated to a considerable extent, we may sup-
pose the guardian seeks to fob off his wife's children and his
own wards with the land ; and, as a sufficient reason therefor,
alleges and shows that, on August 30, 1842, more than three
years after he took the deed in his own name, he executed a
deed of trust in favor of the minor children of James McNa-
mara, deceased, for two thirds of the Blairville property, which
declaration was duly recorded in Indiana county on May 15,
1843.    I presume by that time the guardian. had perceived
some glimpses of the nature and value of the speculation which
might be made in the lands.

" For the $370 money borrowed from the funds of the
wards and which went into the purchase of the land by Royer,
no provision was made in the declaration of trust—that being
perhaps forgotten.    The guardian now files his account and
prays credit for the land or rather declines and refuses to charge
himself with the sum of $5,777.72, money belonging to his
wards, which he put into that purchase.

" Every doctrine of natural justice, every principle of judi-
cial equity and every sound maxim of law which can be
brought to bear on the case require that the guardian shall ac-
count for the money."

In Stanley's Appeal, 8 Pa. 431, Mr. Chief Justice GIBSON
says: " The fund was invested in shares of Schuylkill bank
stock, purchased and standing in the guardian's name, which
have greatly fallen in value, yet the appellant insists that the
ward shall take them in specie at the price paid for them.    If
the guardian thought they were the property of the ward, it is
singular that he said nothing about them, when he paid her
the balance due on his guardianship account and took a release
from all further reponsibility.    His silence on that head leads
to a conclusion that he viewed them as his own ; and, if they
were so then, they are a part of his estate now.    But, whether
he did so or not, it is conclusive that he purchased them in his
own name.    The fact that he retained the power to make them
his own, if the investment should prove to be a valuable one,
estops his executor from denying that he purchased them in
his own right.    This elementary principle, applicable to every

investment by a trustee, is essentially that which forbids him to place trust money in the hands of a banker in his own name, except at the risk of the banker's insolvency, or in any other way to confound it with his own."

This principle has also been held in Commonwealth v. Mc-Alister, 28 Pa. 480, and in McAllister v. Commonwealth, 30 Pa. 536, in which Mr. Justice PORTER, rendering the opinion of the court, says : " There is nothing in the modern management of trusts to justify the relaxation of a solitary rule for their preservation.   Most men know—but men whose lives are spent in advising people of their legal rights know better than others—how generally the cestui que trust is the victim of that spirit of speculation which marks the present age.   It was, therefore, strong ground on which this court pitched when, in Morris v. Wallace, 3 Pa. 319, they said that an investment in stocks in the trustee's individual name, was itself a breach of trust ; and I understood that case to apply even to securities in which the court, if addressed, would have directed an investment.   Whether a trustee may make a temporary deposit of funds in a place where prudent and honest men generally deposit their money or whether he is obliged to carry them home in his pocket, where they may be lost, or keep them over night in his house, where they may be stolen, it is unnecessary to decide, simply because the case does not call for such a decision ; but, if he undertakes to make a deposit in a banking institution, the entry must go down on the books of the institution in such terms as not to be misunderstood, that they are the funds of the specific trust to which they belong.   He cannot so enter them as to call them his own today, if they are good, and tomorrow, if bad, ascribe them to the estate ; or shift them, in an emergency, from one estate to another ; or, by the deposit, secure the discount of his own note and have the deposit snatched at by the bank, if the note be not paid, or attached by a creditor, as the depositor's individual property."

The same principle was held in Morris v. Wallace, 3 Pa. 319, and in Noble's Estate, 178 Pa. 460.   In the latter case, President Judge HAWKINS, of the orphans' court of Allegheny county, said : " It is essential to the safe and orderly administration of trusts, not only that investments should be in the securities prescribed by law but that a visible impress of the trust

should be stamped upon them, for the obvious reason that every departure from the prescribed course must give enlarged scope to incompetency and rascality and gratuitously introduce an element of hazard and uncertainty which must add complication to settlement and impose unnecessary burdens upon the cestui que trust. Investments, in the mode prescribed by law, imply safety and furnish a ready means of settlement; whereas mingling the trustee's individual money with the trust funds always raises embarrassing difficulties in tracing them. In many cases, such as investment in trade or in speculation, these difficulties are insurmountable; in all of them the cestui que trust is put to the disavantage of making investigation; the assets are subjected to the risk of reprisal by the trustee's creditors and the trustee is not afforded the apportunity of shifting the burden, in the event of loss, from himself to the trust." The case was affirmed upon this opinion.

Many of these cases, of course, relate to the investment in personal property, and, if the principles so strongly enunciated apply in such cases, how much more will they apply to the investment in a mortgage taken in the name of the trustee which goes upon the records and particularly when he makes purchase of the property under foreclosure proceedings and takes the title in his own nome, the deed therefor being also a matter of record? The executor in this case, having made the investment in his own name, having purchased the mortgaged premises at sheriff's sale and taken the title to himself, let him have what he can make out of his bargain. The estate, whose money was invested, and those who are interested in that estate are at least entitled to exercise an option as to whether they will take the property in which the money of the estate was invested or require, at the hands of the executor, the amount of the money so invested, with interest thereon. They seem to prefer the latter and, that being so, the executor should have been surcharged with the amount invested, together with interest thereon from the time the last payment of interest was made to the appellant, Samuel T. Carr:

2. At the time of the death of the testatrix, she held a note or certificate of deposit for the sum of $200, given by her attorney who was subsequently the attorney of the executor, who allowed the said sum to remain in the hands of his attor-

ney for some ten years when the maker of the note was found to be insolvent and the entire amount was lost to the estate. In Shaffer's Appeal, 46 Pa. 131, collection by an administrator from a solvent debter was postponed several years, until the debtor became insolvent, it being alleged as a reason therefor that the decedent had agreed to give the debtor time for payment. Mr. Justice THOMPSON, speaking for the court, said: "We have also carefully examined the auditor's report upon the exception to the claim of the accountant for a credit of the amount of the claim against Walker, on the ground that he was insolvent and the debt desperate. The auditor was of opinion that it was lost by the negligence of the accountant and charged him with it. We discover no error in this. It would seem from the testimony that Walker was solvent from the death of the decedent until within five or six months of the time judgment was obtained. It might, therefore, have been collected years before suit was finally brought. The accountant was not justified in postponing the collection by anything Mrs. Doughty said or did in the premises; but, supposing she might have made such an agreement to give Walker time as would estop her from calling on the administrator to account for it, it being lost by insolvency in the meantime, it is enough that she did not give him any fixed period of time; so that the administrator might have proceeded to enforce payment of the debt the next hour after what occurred between Mrs. Doughty and the agent of Walker." This is fairly applicable to the case in hand. The case is not helped by the fact that the debtor here was the attorney of the testatrix in her lifetime and of the executor after her death. He could not act as a disinterested counsellor for the estate and at the same time act personally for himself. If the executor desired to shield himself behind legal advice, he should have secured disinterested advice from an independent source.

We can see no difference in principle between the surcharge which the court made in this case, of money invested by the executor in the note or certificate of deposit of the same person who was debtor to the estate for the $200 note or deposit with which it is now sought to surcharge the executor. He was, in our judgment, under all the authorities, bound to collect this note and hold it either for the payment of debts or to be

369, (1904).] Opinion of the Court.

distributed under the provisions of the will. See also Gardner's Estate, 199 Pa. 524. The executor should, therefore, be surcharged, the amount of $200, with interest thereon from such time as he failed to account for the interest to the cestui que trust.

3. It follows, from what is said herein, taken in connection with the decree of the court below in surcharging the executor with the amount of money invested by him directly in the hands of his attorney, the appellant's contention being thus in the main sustained, that the costs should not be paid by the estate; they should be paid by the executor.

We have quoted, at considerable length, the vigorous language of several judges of our Supreme Court, in order to recall and emphasize the rules in regard to the management of trust estates which have never been modified or relaxed and which seems to need emphasis at the present time.

We are of opinion, therefore, that the executor should be charged, 1. With the amount invested in the Lewis mortgage, with interest thereon from the date at which it was last paid. 2. With the amount of the note of $200, with interest thereon from the date to which it was last paid, and 3. With the costs of the audit in the court below and in this court.

This practically disposes of all the assignments of error, although not followed in the order in which they are assigned.

The decree of the court below is, therefore, reversed and the record remitted, with directions to have the account of the executor restated in accordance with this opinion.