## Clark's Estate.

*Guardian and ward—Investing funds—Deposit in bank—Surcharge.*

1. A guardian of three wards who opens a bank account in his name as guardian, in a bank of which he is a director, and where he has his own and his firm's accounts, such account bearing interest on balances at four per cent and subject to check without notice, cannot be surcharged with a loss by failure of the bank, because he kept $1,200 of his wards' moneys in the bank for eight months, without otherwise investing it.

2. In such a case the guardian is all the more excused for failing to invest, if it appears that he did not mingle any of the trust moneys with his own, kept accurate accounts of the trust fund, was diligent in making investment of their moneys, and is not shown to have known of any investment for the fund that was lost, or to have known that the bank was insolvent.

3. All that a court of equity requires of trustees is common skill, prudence and caution. Executors, administrators or guardians are not liable beyond what they receive, unless in case of gross negligence; when they act as others do with their own goods and in good faith, they are not liable.

Argued April 26, 1909. Appeal, No. 148, April T., 1909, by Anna S. Morrison, from decree of O. C. Allegheny Co., Sept. T., 1908, No. 341, dismissing exceptions to adjudication in Estate of Samuel Clark et al., Minors. Before Rice, P. J., Porter, Henderson, Morrison, Orlady and Head, JJ. Reversed.

Exceptions to adjudication. Before Over, J.
The opinion of the Superior Court states the case.

*Error assigned* was in dismissing exceptions to adjudication.

*Andrew Herron Mercer*, for appellant.—All that a court of equity requires from trustees is common skill, common prudence and common caution. Executors, administrators or guardians are not liable beyond what they actually receive, unless in case of gross negligence; for when they act as others do with their own goods and with good faith and are not guilty of gross negligence, they are not liable: Fahnestock's Appeal, 104 Pa. 46; Neff's App., 57 Pa. 91; Eyster's App., 16 Pa. 372.

The directors of a bank are not liable for loss resulting from the frauds of an officer of the bank, unless they have been guilty of gross neglect, which means an absence of that diligence that ordinary prudent men in the conduct of such business would have exercised: Mason v. Moore, 4 L. R. A. (N. S.) 597; Keller's App., 8 Pa. 288.

*Howard Zacharias,* with him *Harry Diamond,* for appellee.— Appellee contends the guardian was negligent in allowing the balance on hand to remain uninvested in bank for a period of more than nine months: Law's Estate, 144 Pa. 499; Evans's Est., 7 Pa. Superior Ct. 142; Neff's App., 57 Pa. 91.

OPINION BY MORRISON, J., July 14, 1909:

David Morrison was appointed guardian of Robert, Samuel and Theodore Clark, minor children of Richard Clark, deceased, on December 10, 1897, and continued to act in that capacity until September 27, 1907, when he died. He opened an account as David Morrison, guardian, in the Enterprise National Bank of which he was a director. His first deposit was on February 3, 1898. The account was, at all times, subject to check without notice, and bore four per cent interest on balances. The guardian also kept a book account, exclusively for said guardianship fund. The entries in this book, as well as the bank book, show that the items of receipts, expenditures and deposits were all promptly and correctly entered. No other funds were mixed with the trust moneys. The receipts chiefly consisted of pension and rents and the disbursements were for taxes, repairs, insurance and personal expenses of his three wards. The receipts from the estate exceeded the disbursements.

On March 7, 1903, the guardian invested $2,000 of the trust funds in a mortgage on the property of one Edward Williams. On January 9, 1905, there was to his credit in the Enterprise National Bank, $819.99, and on October 18, 1905, there was $1,110.81 credited to this account. On the latter date the bank was closed by the proper authorities, and by reason of the defalcation and death of the cashier, said bank went into the hands of a receiver. He afterwards credited $75.76 to said ac-

count, making a total of $1,196.57. The guardian immediately opened another guardianship account in the Manchester Savings Bank and Trust Company. On May 28, 1907, he invested $1,400 of said trust funds in a mortgage from Elizabeth Gwynne, and at the time of his death he had a cash balance in said trust company to his credit. The guardian filed, February 5, 1903, a statement with the register showing a balance on hand of $1,948.68, and on February 10, 1906, another triennial statement showing a balance in his hands of $3,230.97. This balance included the Williams mortgage. The decedent had, at the time said Enterprise National Bank closed its doors, three other accounts therein; his account as treasurer of Allegheny Commandery, of his firm, Morrison Brothers, and his own private account. Up to the date of closing its doors said bank was of good financial reputation, had large deposits and was deemed sound and solvent by its directors, depositors and the community at large.

The receiver paid two dividends on account of said deposit, leaving a balance due the guardian of $957.26. We have stated the above facts from the appellant's history of the case, at length, because we understand that they are substantially correct and that the appellee agrees therewith. The question involved is the liability of the guardian for the loss of $957.26 because he did not invest it in a mortgage or other good security, but allowed it to remain in the bank to the credit of his account as guardian from January 1, 1905, to October 18, of the same year, when the bank failed. The account filed by Anna S. Morrison, executrix, came before Judge OVER, auditing judge, who allowed the credit for said $957.26, and the new guardian excepted to this allowance and on consideration, Judge OVER dismissed said exception. The new guardian renewed the exceptions and on hearing before the court, HAWKINS, P. J., vacated the former decree and surcharged the accountant with the said sum in bank and entered a final decree accordingly. To this decree Judge OVER filed a vigorous dissenting opinion. It is from said decree of the court that this appeal comes before us.

The opinion of the court by HAWKINS, P. J., says: "The prin-

ciple is well settled that a trustee may keep trust funds on deposit for a reasonable time while seeking an investment; but if he allows them to remain there by way of investment, he will be liable to make good the resultant loss: Law's Est., 144 Pa. 499. What will be considered a reasonable time will depend on circumstances, Noble's Est., 178 Pa. 460, and the proof here shows that investment of the fund in authorized securities might have been made at any time during the eight months which elapsed prior to the bank's failure. The opportunity to invest made it the duty of the guardian to avail himself of it; and if he had done so the fund would be intact. And there was this additional reason for prompt action that being a director in the bank he presumptively knew of its insolvency. The loss was therefore caused by accountant's neglect of duty and he ought to bear it." The above opinion contains all the reasons given by the court for overruling the auditing judge and surcharging the accountant. In our opinion, the dissenting opinion by OVER, J., furnishes quite satisfactory reasons for holding that the accountant ought not to be surcharged. We do not think that Law's Est., 144 Pa. 499, sustains the court in surcharging the accountant with the money lost in the bank. In that case the orphans' court was reversed for charging the trustee with money lost by the failure of the Bank of America under very similar circumstances to those in the present case. In fact the only substantial difference in the two cases is that the money lost in the Law case was a much larger sum than in the present one, but it only remained in the bank about three months before the failure while in the present case the fund remained in the bank about eight months. In the Law case Mr. Justice CLARK for the Supreme Court said: "As a general rule the measure of care and diligence required of a trustee is such as would be pursued by a man of ordinary prudence and skill in the management of his own estate: Fahnestock's Appeal, 104 Pa. 46. It is equally well settled, however, that a trustee who invests the funds belonging to a trust on personal security does so at his own risk. This is so well settled that a citation of authorities is unnecessary. . . . So, also, executors, trustees, or guardians will not be liable if, in the ordinary discharge of

their duty, they deposit the assets temporarily in a bank, although the bank fail. But the trustee must be careful to make the deposits in the name of the trust estate, and not to his personal credit, and not to mix the trust funds with his own; otherwise he will be liable." Citing cases.

Judge HAWKINS next cites his own case of Noble's Est., 178 Pa. 460, which was affirmed by the Supreme Court on his opinion. But in that case the guardian mingled his ward's money with his own so that it was impossible to trace the investments made for his ward. Therefore, he was surcharged with interest on the principal, etc. We are unable to see that that case has any bearing on the present one. David Morrison did not mingle his ward's funds with his own nor with any other fund; he kept an accurate account of all receipts and disbursements on account of his wards and he kept a separate bank account of their funds in his name as guardian. The learned counsel for appellee states in the first sentence of his argument: "The only question in this case is whether or not the deceased guardian left the balance on deposit belonging to his wards in bank on an account hearing interest at the rate of four per cent per annum for a period of time longer than was necessary to secure a good and legal investment for the amount of this balance." It must be borne in mind that it is a conceded fact that this account was subject to check on any date and therefore it was not an investment made at the risk of the guardian. It is expressly decided in Law's Estate that the allowance of interest on such an account will not change the transaction into an investment.

A weak attempt was made to show that the guardian might by diligence have found an investment of this money on a mortgage during the eight months it remained in the bank. It is not shown, however, that the guardian had any knowledge of an opportunity to safely invest the money in a mortgage. The fact that this guardian made several other investments in good mortgages for his wards indicates that he was not negligent. The language of the learned auditing judge applies with much force to this phase of the case. "As he is dead, we cannot know certainly what efforts he made; but judging from the faithful and methodical manner in which he managed his ward's es-

tate, and made mortgage investments, it can be inferred he made reasonable efforts to invest the amount in his hands in securities designated by the statutes. Not having the same opportunity as a trust company, he should not be held to as strict a liability."

The testimony offered by the exceptant to show that a certain trust company could have furnished a mortgage for $800 to $1,000 while the fund in question lay in the bank is not very material. It is not shown that the guardian had any knowledge of this and if he did he may have had good reason for rejecting the mortgage. Counsel for appellee contends that the authorities cited by appellant's counsel are not applicable to the facts in this case, and he especially refers to Neff's App., 57 Pa. 91, and Fahnestock's App., 104 Pa. 46, and Eyster's App., 16 Pa. 372, but we think the principle considered and discussed in those cases does apply. In Neff's Appeal it is stated in the syllabus: "All that a court of equity requires of trustees is common skill, prudence and caution. Executors, administrators or guardians are not liable beyond what they receive unless in case of gross negligence; when they act as others do with their own goods and in good faith, they are not liable."

In Fahnestock's Appeal the same principle is recognized. In it, Mr. Justice CLARK said: "A reasonable degree of vigilance and the exercise of good faith is the standard of the trustee's duty. The office is often a thankless one, and if, as we said in Eyster's App., 16 Pa. 372, guardians or trustees are to be held responsible for all negligence, and are not allowed the exercise of a reasonable discretion and prudential care in the management of their trusts, it will deter prudent men from assuming the office which in itself is sufficiently onerous and already undertaken by such men with reluctance."

In Bartol's Est., 182 Pa. 407, it was held as stated in the syllabus: "A trustee will not be surcharged for a loss which has occurred to the trust estate if he has exercised common skill, common prudence and common caution: but, he will be held responsible for supine negligence or for wilful default." To the same effect is Semple's Est., 189 Pa. 385.

But there is another consideration which admonishes us to

be cautious about surcharging this accountant. He had three wards, and the amount of money remaining in the bank during the eight months in question was only about $1,200. If this belonged to one ward it might be argued with some force that there was negligence in leaving that sum in an open account in the bank. But when that sum is divided by three, it is not certain that a guardian ought to be adjudged guilty of negligence and liable to a surcharge when he only kept in bank about $400 for each ward as in case of sickness or accident he might be called upon to use the money.

But the learned court attached some importance to the fact that the guardian was a director in the bank and he presumptively knew of its insolvency. We think this inference was well answered by Judge Over in his dissenting opinion as follows: "Had he known of it would he not have withdrawn his own, the firm's and the Allegheny Commandery accounts? And that he did not, rebuts any presumption against his integrity that might arise because he was a director, and it is also rebutted by the character of the man as shown by his faithful administration of his trust.

"There has surely been no wilful default by the guardian in this case, and as it seems clear that he has exercised the care, diligence and discretion in managing this estate that any ordinary man would in the conduct of his business, he cannot be charged with supine negligence, and he should not be held liable for the loss on the deposit in bank."

The decree of the orphans' court is reversed and record remitted with instructions to restate the account by allowing credit to the accountant for the money in the Enterprise National Bank; the costs of this appeal to be paid by the appellee