# ESTATE OF W. W. LAW, A MINOR.

APPEAL BY PHILADELPHIA FINANCE CO. FROM THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued April 10, 1891—Decided October 26, 1891.
[To be reported.]

1. A deposit is where a sum of money is left with a bank or banker for safe-keeping, subject to the depositor's order, and payable, not in the specific money deposited, but in a sum equal thereto; and it may or it may not bear interest, according to the agreement between the parties.
2. Though the relation between the depositor and his banker is that of creditor and debtor simply, the transaction cannot be regarded as a loan, unless the money is left, not for safe-keeping, but for a fixed period at interest, in which case the transaction assumes all the characteristics of a loan.
3. Executors, trustees, or guardians, will not be held liable, where, in the ordinary discharge of their duties, they deposit assets temporarily in a bank of good repute, though the bank afterward fail; but the de-

Statement of Facts.

posit must be in the name of the trust-estate, unmixed with the depositor's own funds: Commonwealth v. McAlister, 28 Pa. 480.

(a) A guardian, while seeking investment, deposited assets of the trust-estate in a bank, temporarily, in his name as guardian, upon an agreement that he was to receive interest at three per cent, and he was to give two weeks' notice of his desire to withdraw. The bank, then in good repute, three months afterward failed:

4. The money being entered as a deposit merely, the provision for notice of withdrawal did not constitute the transaction an investment; it was a reasonable provision, not inconsistent with a bank deposit; and on the failure of the bank, the guardian was not responsible: Frankenfield's App., 11 W. N. 373, and Baer's App., 127 Pa. 360, distinguished.

Before PAXSON, C. J., GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

No. 233 January Term 1891, Sup. Ct.; court below, number and term not shown.

On October 13, 1890, the account of Henry W. Scott, guardian of William W. Law, a minor, was called for audit before ASHMAN, J., when a credit was claimed by the accountant for the sum of $3,339.12. The allowance of the credit was objected to by the Commonwealth Title Insurance & Trust Company, substituted guardian of said minor.

Before the auditing judge, it was made to appear that on January 29, 1890, the accountant received $3,339.12 of the money of his ward, part of the proceeds of a policy of life insurance, and immediately placed it in the Bank of America, where it remained until the bank failed on April 30, 1890; that the money was deposited in the accountant's name as guardian;* that the accountant had been advised by an officer of the Philadelphia Finance Company, the surety on his bond, that the bank mentioned was entirely solvent and safe; that for several years the accountant had kept his personal account as a depositor in the same institution; that there was nothing upon the deposit-book, or the books of the bank, indicating that the placing of the ward's money in the bank was other than an ordinary deposit, but the accountant testified that he had a verbal agreement with the bank whereby the bank agreed

---

* Whether the ward's name was shown on the bank account, or not, did not appear.

to allow him three per cent interest, if he would allow the money to remain until he should find an investment for it, and he was to give two weeks' notice before withdrawing it.

The auditing judge, considering Baer's App., 127 Pa. 360; Commonwealth v. McAlister, 28 Pa. 486; Heckert's App., 69 Pa. 264; Seidler's Est., 5 Phila. 85, allowed the credit claimed, and decreed a balance of $1,620.50 to be due by the accountant.

Exceptions to the adjudication, filed by the Commonwealth Co., substituted guardian, having been argued before the court in banc, the following opinion was filed, December 9, 1890, PENROSE, J.:

That a trustee is responsible for a loss arising from his loan of trust moneys upon personal security, is too well settled to require the citation of authority. The apparent exception which permits such moneys to be deposited with a reputable bank or banker grows out of the necessity of the case; for, while such a transaction is actually a loan, the moneys being at once blended with others of the debtor and forming a common fund: Morse on Banking, § 289; Bank of Northern Liberties v. Jones, 42 Pa. 536, it is manifestly more prudent to thus place them for safe-keeping than to retain them in the custody of the trustee at the risk of being stolen. But the exception being one founded in necessity is not to be extended beyond the necessity which demands it. The loan to the bank or banker is purely for safe custody, and the moneys must at all times be subject to the demand of the depositor. The moment this control is parted with, no matter for how brief a period, the contract with the bank loses altogether its resemblance to a deposit, and assumes the character of an ordinary loan or investment.

In Salway v. Salway, 2. Russ. & M. 215, the trustee had deposited, under an arrangement that his checks were to be in the handwriting of the partner of one who had become his surety, though they were to be signed by himself; and Sir JOHN LEACH, as Vice Chancellor, ruled, on the authority of Churchill v. Hobson, 1 P. Wms. 243; Adams v. Claxton, 6 Ves. 226, etc., (see, also, Heckert's App., 69 Pa. 264,) that he was not responsible for a loss arising from the failure of the

Opinion of Court below.

banker. This was reversed on appeal, Lord BROUGHAM saying in the course of his opinion, "Consider the position of the fund, had a sudden run come upon the bank. White, on hearing of it, would be bound, in the discharge of his official duty, instantly to withdraw the whole balance and place it in a place of greater safety; but the arrangement which he had made prevented him from doing this, without the concurrence of Anderson, who lived at some distance, and who, even had he lived in the same town, might have been absent or unable from illness to act, and who, had he been both on the spot and able to write checks, might have been unwilling and refused."

The loss of control with the consequent inability to act, in the case of a run on the bank, is much more complete where, instead of being simply dependent upon the act of one who could scarcely fail to be friendly, it is expressly stipulated that payment shall only be demanded after a notice of two weeks. This was the precise point decided in Frankenfield's App., 11 W. N. 373, and in Baer's App., 127 Pa. 360. It is true that in the latter case the administrator in making the deposit took from the banker a certificate setting forth that the moneys were payable to his order, twelve months after date, with interest at six per cent, and the failure took place within six months; but in Frankenfield's Appeal, the deposit was made payable in three months, with a further provision for thirty days' notice of an intention to withdraw the amount, and the failure did not occur until four months after the date of the certificate.

It is impossible to suppose that the question can be affected by the nature of the evidence of the transaction. The trustee who is prudent enough to have the terms of the deposit expressed in a certificate, cannot be regarded as less entitled to protection than one who has simply an entry of the amount in a deposit book, and is satisfied with parol proof as to the rate of interest and time of payment. His loss of control, indeed, may be greater by reason of uncertainty thus occasioned. Nor can it be that the question depends upon the length of time required for notice. The mischief may be just as great from tying the hands of the trustee for fourteen days as for thirty days. The loss of control in Salway v. Salway might not have been for a single day; and in Frankenfield's Appeal it was ex-

Arguments.

pressly declared that "the brevity of the time does not affect the question."

The cases cited declare that the result is not changed by the absence of bad faith on the part of the trustee, the fact that the bank was generally believed to be financially sound, or that the deposit was made under the advice of counsel; and, while the severity of the doctrine must be admitted, it grows out of the general policy of the law with regard to the protection of estates of persons under disability or excluded from personal management.

The exceptions are sustained.* Let the necessary decree be prepared by counsel.

—A formal decree having been filed, adjudging that the accountant pay to the Commonwealth Co., the substituted guardian, the sum of $5,126.58, the Philadelphia Finance Co., surety upon the bond of the accountant, took this appeal, specifying that the court erred in not confirming the adjudication and dismissing the exceptions thereto.

*Mr. John Douglass Brown* (with him *Mr. Warren G. Griffith* and *Mr. J. Levering Jones*), for the appellant:

1. This court has invariably decided, and in so deciding has been in accord with the decisions both of England and America, that a trustee is not liable for a loss resulting to a fund where he has shown ordinary care and good faith: Neff's App., 57 Pa. 91, 96. Except in cases of gross negligence, trustees are not liable beyond what they actually receive; and when, observing statutory provisions relating to investments, they deal with the moneys intrusted to them, in good faith, as men of ordinary prudence and sagacity deal with their own property, they are not responsible for losses occurring: Witmer's App., 87 Pa. 120, 123. A reasonable degree of vigilance and the exercise of good faith is the standard of the trustee's duty: Fahnestock's App., 104 Pa. 46, 52; Fesmire's Est., 134 Pa. 67, 85.

2. There is a clear distinction between a certificate of deposit, with the defined and unqualified characteristics of a loan or investment at a high rate of interest, as in Frankenfield's App., 11 W. N. 373 (127 Pa. 369 n.), and Baer's App., 127

---

* ASHMAN, J., filed a dissenting opinion: See Law's Est., 27 W. N. 345

Arguments.

Pa. 360, and a general deposit, as in this case, at a small rate of interest pending investment, with no intention of permanency, and with none of the incidents of an investment. "It is impossible to suppose," says the learned court below, "that the question can be affected by the nature of the evidence of the transaction," etc. But a "certificate of deposit," is not simply evidence of a general deposit of money in the ordinary course of banking. It is more; certificates of deposit are designed to subserve with convenience the purpose of temporary investments of money : Daniel on Neg. Inst., § 1707 a ; Morse on Banks & Banking, § 298.

3. Thus, the question in this case is narrowed to this : Is the deposit of trust funds at interest, in every case to be forbidden, if the depositary requires that a reasonable notice is to be given before drawing; and this, whether the loss is attributable to the arrangement or not? It is admitted that a trustee should place uninvested trust funds on deposit in a bank of good reputation, while seeking an investment for them : Perry on Trusts, § 443. The guardian, in this case, had deposited these funds under a temporary arrangement while seeking an investment; the arrangement was an ordinary measure of prudence on the part of the bank; the time stipulated for notice was a reasonable one, and one so short that, in view of the purpose of the guardian to find an investment, the money was practically on call; and it has never been pretended that the loss to the estate in any way grew out of the arrangement complained of.

*Mr. Frank T. Lloyd* (with him *Mr. Preston K. Erdman*), for the appellee :

In Hanbest's App., 92 Pa. 482, the depositor, an executor, was relieved from liability only on the ground that he was continuing a call deposit of his testator. The facts, as they arose in Frankenfield's App., 11 W. N. 373, the decision thereon, and the reasoning upon which that decision was based, are all of peculiar applicability here ; and it is difficult to conceive how this court can reverse this decree without overruling the authority of that case, approved in unstinted language in Baer's App., 127 Pa. 360. But, beyond the facts of the particular case cited, the court therein laid down the principle that

no trustee must part with the control of his trust funds, even for a brief period, except upon a legal investment. The apparent exception of permitting deposits in bank, is for the purpose of safety alone; and the making of terms by the guardian as to time and rate of interest is not within its sanction. The evils that certainly would flow from the practice, if legalized, are patent to all.

OPINION, Mr. JUSTICE CLARK:

This is an appeal by the Philadelphia Finance Company, surety upon the guardianship bond of Henry W. Scott, guardian of William W. Law, from the adjudication by the Orphans' Court of Philadelphia county, upon the account of said guardian. On January 29, 1890, Scott received $3,339.12 of the money of his ward, and immediately deposited the same in the Bank of America. The accountant had kept his personal account, as a depositor, in the same institution for several years, and had been advised by an officer of the finance company, which latter company was surety on his bond as guardian, that the Bank of America was entirely solvent and safe. The deposit was in a separate account, in the name of the guardian as such. No certificate was issued; the whole transaction was evidenced only by an entry of credit upon the books of the bank in the usual form. The accountant was in search of an investment, and the deposit was to remain only until he could find one. The bank agreed to allow him three per cent interest, but he was to give two weeks' notice before withdrawing it. The bank failed on the thirtieth day of April following. At the time of the deposit the bank was in good repute, and there is no allegation of bad faith, or want of due care or diligence. The only question for our consideration is whether or not, under such circumstances, the trustee is responsible for the amount of the deposit.

As a general rule, the measure of care and diligence required of a trustee is such as would be pursued by a man of ordinary prudence and skill, in the management of his own estate: Fahnestock's Appeal, 104 Pa. 46. It is equally well settled, however, that a trustee who invests the funds belonging to a trust on personal security does so at his own risk. This is so well settled that a citation of authorities is unnecessary.

Trustees are not bound to transact personally such business

connected with the trust as, according to general usage, prudent persons, acting for themselves, would ordinarily transact through mercantile agents. Upon this principle it has been held that a trustee investing trust funds is justified in employing a broker to procure securities authorized by the trust, and in paying the purchase money to a broker, if he follows the usual and regular course of business adopted by ordinarily prudent men in making such investments. So, also, executors, trustees, or guardians will not be liable if, in the ordinary discharge of their duty, they deposit the assets temporarily in a bank, although the bank may fail. But the trustee must be careful to make the deposits in the name of the trust-estate, and not to his personal credit, and not to mix the trust funds with his own ; otherwise, he will be liable : Commonwealth v. McAlister, 28 Pa. 486 ; Rees v. Berrington, 2 White & T. L. C. 986, 987. " If the subject of the trust be money, it may be deposited for temporary purposes in some responsible banking house, but in such a manner that the cestui que trust may follow the fund into the hands of the bankers ; and it is no objection that the bank allows interest on the deposits. . . . . If the trustee put the money to his own credit, and not to the separate account of the trust-estate, or if he allow the drafts of another person to be honored, who draws upon the account and misapplies the money, the trustee will be personally liable for the consequences : " Lewin on Trusts, 417. Banks of deposit are a recognized necessity in the commercial world. A trustee who would continuously keep for any considerable length of time a large sum of money about his person or in his house, rather than deposit it for safe-keeping in a solvent and reputable bank or trust company, where all the precautions may be exercised for its safety, might justly be regarded as derelict in duty. No one would be accredited with the exercise of common prudence who would keep his own money in this way ; and a trustee, as we have said, is held generally for such care and diligence as an ordinarily prudent man would exercise in the conduct and management of his own business. " A trustee will not be liable for the failure of a bank in which trust funds have been deposited, if he has suffered them to remain there only for a reasonable time ; but if he allows them to lie there by way of investment, he will be liable to make good the loss. But he must

be careful to make the deposit in the name of the trust-estate, and not to his own credit, and not to mix the trust funds with his own; otherwise, he will be liable: " Bispham's Eq., 139; Perry on Trusts, § 443. Of course, there is no duty to convert securities if, by the terms of the trust instrument, there is sufficient indication that the cestui que trust was intended to enjoy the interest, income, or dividends of the specific securities: Perry on Trusts, 450; Hill on Trustees, 582; Bispham's Eq., 139.

Was this transaction with the Bank of America a deposit of the money, or was it a loan or investment of it? A deposit is where a sum of money is left with a banker for safe-keeping, subject to order, and payable, not in the specific money deposited, but in an equal sum. It may or may not bear interest, according to the agreement. Whilst the relation between the depositor and his banker is that of debtor or creditor simply, the transaction cannot in any proper sense be regarded as a loan, unless the money is left, not for safe-keeping but for a fixed period at interest, in which case the transaction assumes all the characteristics of a loan. The Orphans' Court decided this case upon the rulings of this court in Frankenfield's App., 11 W. N. 373, and Baer's App., 127 Pa. 360; but we think these cases are readily distinguishable from the case at bar. In Frankenfield's Appeal, supra, there was a loan by the trustee of two thousand dollars of trust funds to the Franklin Savings Bank for three months, with interest at six per cent; thirty days' notice to be given of the trustee's intention to withdraw the deposit. The bank was in good repute, and there was no evidence of bad faith or want of care on the part of the trustee. Our Brother GREEN, in the opinion filed, said: " If it had been an ordinary deposit, subject to the check of the depositor from the day it was made, the appellant would probably not have been liable; but it was not a deposit, it was a loan upon merely personal security for a fixed period, at interest; and during that period the money, because of the loan, was entirely beyond the trustee's control. The twenty-fifth section of the act of June 12, 1836, expressly provides that such investments must be made under the direction of the Court of Common Pleas, and only exempts the trustee from liability when he pursues this course in good faith." In Baer's Appeal, supra,

the banker's certificate of deposit was substantially in the same form as in Frankenfield's Appeal, supra, excepting that there was no stipulation for notice of the withdrawal of the deposit. The transaction possessed all the qualities of a loan of money for a year at four per cent interest. It is of no consequence that the borrower is a bank, for a bank may borrow money. Parties engaged in the banking business, whether as individuals or as members of a partnership or of a corporation, may take a loan of money for a fixed period of time at interest, with like effect as persons engaged in other pursuits. The transaction may be termed a time deposit, but it is none the less a loan, and subjects the lender to that degree of responsibility.

In the present case, the money was placed in the bank, not as an investment for any fixed period, but merely for safe-keeping, and at a small rate of interest until a suitable investment could be found. This was the express understanding of both parties at the time. The transaction was entered upon the books of the bank as a deposit merely. It was treated as a temporary, provisional, or precautionary arrangement. No person would speak of this as an investment; an investment carries with it a greater or less degree of permanency, which does not characterize this transaction. It is true that two weeks' notice was to be given of the withdrawal of the deposit, but this was a reasonable provision and not inconsistent with a bank deposit. Almost all savings institutions stipulate for notice of withdrawal with their depositors, and such a stipulation is for the benefit not only of the bank, but also of its depositors; the reasonableness of the time is a question in each case to be determined by the court. It is said the trustee thereby loses control of the money; but that is not the true test. The depositor always, in a certain sense, loses control of the money when he places it in bank; for the bank may refuse payment of his checks, and, as he then has no claim upon the specific money, he stands upon the footing of a creditor merely. It is true, a trustee, as a general rule, is not allowed to part with the control of trust money: Salway v. Salway, 2 Russ. & M. 215; but he may do so by way of precaution against loss, by a deposit in a solvent and reputable bank. A deposit, as we have said, is a temporary disposition of money for safe-keeping; and it is upon this ground alone that the trustee is

justified in depositing trust funds in bank, and it is upon the same ground that a deposit is distinguishable from an investment.

We are of opinion, for the reasons stated, that the trustee was not properly chargeable with this loss:

> The decree of the Orphans' Court is reversed, and the record remitted in order that the account may be restated and a decree entered in accordance with this opinion; the appellee to pay the costs of this appeal.