## Glassburner's Estate.

*Guardian and ward—Investment of funds—Surcharge—Testamentary guardian.*

Where a testator appoints his brother who is not an active business man guardian of his son and authorizes him "to invest such money belonging to my boy that may come into his hands, in such manner as will, in his opinion, be for the interests of the boy," and the guardian in good faith deposits the money in a bank on an open account at four per cent interest, he cannot be held liable for the loss of the money resulting from the failure of the bank.

Argued May 7, 1909. Appeal, No. 140, April T., 1909, by Harry Glassburner, from decree of O. C. Allegheny Co., March T., 1908, No. 128, dismissing exceptions to adjudication in Estate of Harry Glassburner. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and BEAVER, JJ. Affirmed.

Exceptions to adjudication.

The facts appear by the opinion of the Superior Court.

The auditing judge refused to surcharge the guardian.

Exceptions to the adjudication were dismissed by the court in banc. HAWKINS, P. J., dissenting.

*Error assigned* was in dismissing exceptions to adjudication.

*A. H. Mercer*, with him *George H. Quaill*, for appellant.— The nature of a testamentary guardianship is not a familiar fact. Such a guardianship supersedes the claim of any other

guardian, and extends to the person, and all real and personal estate of the child, and continues until it arrives at full age: Sheetz's Estate, 6 Pa. Dist. Rep. 367; Arthur's Appeal, 1 Grant, 55.

While the record may not disclose any willful default or supine negligence chargeable to this guardian, it is submitted that such lack of ordinary business acumen amounts almost to a breach of trust: Clark's Appeal, 18 Pa. 175; Evans' Est., 7 Pa. Superior Ct. 142; Bartol's App., 182 Pa. 407; Barker's Est., 159 Pa. 518; Nyce's Est., 5 W. & S. 254.

*T. P. Trimble*, of *Trimble & Chalfant*, for appellee.—We ask the court to decide this case in favor of the accountant for the reason that the will creating the trust gave the testamentary guardian sufficient discretion to permit the investment of the money coming into his hands in a loan to any reputable and responsible bank, and that he is not bound by sec. 22 of art. III of the constitution of Pennsylvania, nor by the acts of assembly regulating the investment of trust funds: Pleasant's App., 77 Pa. 356; Barker's Est., 159 Pa. 518; Calhoun's Est., 6 Watts, 185; Chambersburg Saving Fund Association's App., 76 Pa. 203; Bartol's Est., 182 Pa. 407.

OPINION BY MORRISON, J., July 14, 1909:

Appellant's counsel states the question involved as follows: "Liability of the testamentary guardian to be surcharged for the loss of $1,057.90 invested at four per cent interest in the Enterprise National Bank at the time of its failure and for almost two and one-half years prior thereto." The assignments of error raise the question above stated.

Charles Glassburner died testate May 11, 1902, and by his last will and testament he appointed Henry Glassburner, his brother, executor of his said will and testament and testamentary guardian of his son, Harry Glassburner, in the following words: "And also testamentary guardian of my boy, Harry Glassburner, and authorize him to invest such money belonging to my boy that may come into his hands in such manner as will, in his opinion, be for the best interests of the boy."

The guardian filed his first and final account on January 31,

1908, and the ward being then of full age, by his counsel, excepted to the decree of distribution made by the orphans' court, allowing the guardian credit for $1,057.90, which was on deposit at four per cent interest in the Enterprise National Bank, at the time of its failure. In the court below there was a vigorous contest over the question of whether or not the guardian should be surcharged with said sum standing to his credit as guardian in said bank. The majority of the court, in an opinion written by MILLER, J., dismissed the exceptions and allowed the guardian credit for said sum of $1,057.90. To this decree a bill of exceptions was filed and sealed. HAWKINS, P. J., filed a dissenting opinion contending that the exceptions ought to be sustained and the guardian surcharged with said sum.

If this were the case of a statutory guardian, the opinion and conclusion of Judge HAWKINS would be very strong. But, in our opinion, having in view that the accountant was a testamentary guardian, vested with large discretion, and that he was a brother of the testator, a painter, not an active business man, and probably well known to the testator not to be an expert in financial matters, we do not think it would be just to apply to this guardian the strict rules pertaining to statutory guardians. The language of the will directed the guardian "to invest such moneys belonging to my boy as may come into his hands in such manner as will, in his opinion, be for the best interests of the boy." It would be difficult to choose language more appropriate to empower a guardian to use his own judgment as to what character of investments would be for the best interests of the boy. Judge HAWKINS only cites Law's App., 144 Pa. 499, but we do not understand that case to be a review of the management of a testamentary guardian. Moreover, in that case the Supreme Court reversed the lower court for surcharging the guardian with money lost through the failure of the Bank of America. Upon the controlling facts of the present case, the opinion of the court, by MILLER, J., is, in our opinion, much more convincing than that of Judge HAWKINS. We think the opinion and decree of the court are in harmony with the general trend of the decisions applying to the case of a testamentary guardian.

In the opinion of the court we find the following: "Taken, however, in connection with the broad discretion given by the appointment as determined in Bartol's App., 182 Pa. 407, and Barker's Est., 159 Pa. 518, the statutory requirements are 'a dead letter as to the accountant' and he must be relieved from personal liability by reason of the absence of any act showing supine negligence. There is no question of his good faith, diligence and honest belief that the Enterprise National Bank was a solid financial institution. He had a fair right under the discretion given by his brother's will to assume that he was acting for the best interests of the ward in so investing the fund that he could continuously draw therefrom an income as needed for the maintenance of the minor to be paid to the mother."

Counsel for appellant cites Arthur's App., 1 Grant, 55; Clark's App., 18 Pa. 175; Law's Est., 144 Pa. 499; Nyce's Est., 5 W. & S. 254, but those are, all but one, cases of statutory guardians or executors, and they are not controlling in case of a testamentary guardian clothed with large discretionary powers. In Nyce's Estate the testator directed that a sum of money should be put on interest to be well secured. The executors invested that sum in stock of the Bank of the United States, which depreciated during the life of the widow and afterwards, so that it was nearly lost. The executors were held liable because they did not invest the money well secured.

Arthur's Appeal is not a case of a testamentary guardian. Clark's Appeal is a case of statutory guardians; the same may be said of Law's Estate. Counsel for appellant cites and relies on Estate of Lizzie Evans, 7 Pa. Superior Ct. 142, but it does not appear from that case that the guardian was acting under testamentary authority. The soundness of the opinion in that case can hardly be doubted in case of a statutory guardian or trustee, but we think the present case can be distinguished from the cases to which that doctrine is applicable, because of the discretion vested in the guardian by the testator's will.

While this case has been considered on the theory that the guardian invested the money in question in the Enterprise National Bank, yet we do not understand that it was a per-

manent investment. The money was to the credit of the guardian on an open account and while it is true that he was entitled to draw four per cent interest thereon, that was on account of a rule of the bank. We understand that the guardian could have withdrawn the whole or any part of this money any time at his election.

Upon the whole case we are not convinced that the guardian ought to have been surcharged with the money in question and, therefore, the assignments of error are overruled, the decree affirmed and the appeal dismissed at the costs of the appellant.