## Hazelbaker's Estate

Before Lamorelle, P. J., Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

248

*Conard & Middleton,* for exceptant; *Edmund Pennell Hannum,* contra.

GEST, J., March 25, 1933.—The minor came of age on October 27, 1931, and the guardian filed his account shortly thereafter. The guardian had, on February 4, 1930, received, as the minor's estate, $1272.08, being the proceeds of the minor's real estate in Ohio, which the guardian deposited in Northern Central Trust Company. Subsequently, however, on March 25, 1931, he withdrew the money and deposited it in the savings fund department of the County Trust Company, which, on October 9, 1931, closed its doors and is in the custody of the secretary of banking, who has paid a dividend in liquidation of ten per cent., and expects to pay further dividends.

The auditing judge ruled that the deposit of the money was a loan to County Trust Company, that it was an improper investment, and held the guardian liable for it as cash. He also reduced the counsel fee from $125 to $50 and allowed one-half of the commissions claimed, that is, $31.80, instead of $63.60.

It further appeared that the guardian's own money, and that of his wife, were also deposited in the County Trust Company, that he had examined its financial statement, that the savings fund account bore interest at four per cent., that the minor married after the appointment of the guardian, and in June of 1931 the court authorized the guardian to expend the sum of $256.10 to pay for an operation upon her and the necessary expenses thereof. It is also stated in the paper book of counsel for the guardian, though not in the notes of testimony, that in September, 1931, the guardian gave the required thirty-day notice to the County Trust Company to withdraw the money so that it could be paid to the minor on her attaining her majority on October 27, 1931. Unfortunately, the trust company closed its doors on October 9, 1931.

The question in this case is a very narrow one, and none of the cases cited on either side presents a state of facts identical with those of the present case. We are of opinion after our consideration that, under the peculiar facts before us, it would be inequitable to surcharge the accountant as was done in the adjudication. The deposit of the minor's funds in the County Trust Company was made when the trust company was in good standing and had the approval of the secretary of banking of the Commonwealth, and the accountant was not negligent in selecting it as the depository for the short period which was to elapse before the majority of the minor, when she might reasonably expect to receive her inheritance. In the meantime, it became necessary to withdraw some of the money to pay the surgical expenses of the minor. It was not a deposit for a

fixed period of time, and not an investment, but, as was said in Law's Estate, 144 Pa. 499, 508, a "temporary, provisional, or precautionary arrangement," and the time during which the deposit was expected to remain in this bank was only just about seven months. It has been held in ordinary cases that six months is not an unreasonable time to keep cash on hand to await a suitable investment, and here the guardian knew that he would be expected to make settlement with his ward in about that time. Furthermore, in view of the fact that the fund was in both banks about a year and a half, earning four per cent., the minor having married, some of the fund being needed for a surgical operation, and more might, in these times, have been required for support or medical services, we cannot say the cash was unreasonably withheld from investment.

We see no sufficient reason to disturb the adjudication in reference to commissions and counsel fee, which are especially appropriate for the consideration of the auditing judge. The exceptions to the reduction of the commissions, indeed, were not pressed in the exceptant's brief.

Exceptions 1, 2, 3, 13 and 14 are sustained. The remaining exceptions are dismissed, and the account is recommitted to the auditing judge for distribution in accordance with this opinion.

LAMORELLE, P. J., dissenting.—Stripped of verbiage and boiled down to the very limit, I believe these to be the essential facts upon which my decision must stand or fall: A statutory guardian is appointed by this court to receive the minor's share of proceeds of real estate when and if sold; later the land is sold and the minor's share is paid to such guardian upon the entry of proper security; such (corporate) bond is entered pursuant to our decree of July 19, 1929; the money is received February 4, 1930; the minor is then one year and nearly nine months short of attaining her majority; the guardian deposits the money in a bank; later, in March, 1931, transferring it to the "savings department" of another bank, which bank has since been taken over by the State; in May, 1930, the minor marries and in February, 1931, has an operation for appendicitis and, her husband being unable to pay the expenses, her mother assumes the burden; afterward this court, by decree made June 17, 1931, reimburses the mother $256.10, leaving intact the original and only estate of the minor, some $1000, less costs, etc.

Asked why he did not invest in legal securities, the guardian answered: "I thought that was a better way of handling it." In short, he substituted his individual thought for the duty imposed upon him as a fiduciary, and losing the estate because of the failure of the bank and having lent the money without security, I, as auditing judge, felt—and still feel—that the loss, if any, should be borne by him and his corporate bonding company, rather than by the ward whose interests he was bound in law to protect and in a manner known to and provided by law.

This so-called investment is not in the manner permitted by the legislature in section forty-one of the Fiduciaries Act of June 7, 1917, P. L. 447. The accountant was a guardian appointed by the court, so that no question can arise as to a power granted by will or deed. The personal liability of a trustee who invests in a manner not authorized by will or the statute has been fixed in a number of cases. A former chief justice, in Taylor's Estate, 277 Pa. 518, 529, thus expresses himself:

"The law has erected a guidepost for trustees to observe, reading 'Legal Investments,' and if, apparently, that warning is negligently ignored by a fiduciary possessed of nonlegal securities coming from a decedent, he cannot, in the absence of strong explanatory circumstances, shift the risk of such inatten-

tion to his cestui que trust, nor can he escape responsibility by substituting 'supine negligence,' as the test, for the measure of care just indicated."

It thus appears that the trustee has an absolute duty to make his investments in conformity with the law and that the matter of prudence or good faith does not enter into a consideration of unauthorized investments.

It is nowhere shown that the guardian knew in advance that at some time during the existence of the trust he was to be called upon to use even the income; and even had it been so shown, his deposit of the entire estate would be no answer.

I feel that the majority opinion, in reversing the ruling of the auditing judge, runs counter to a well-known legal maxim: "The express mention of one thing implies the exclusion of another." The duty to invest fixed the character of investment, and a deposit is in no sense an investment, legal or otherwise; and we have it out of his own mouth that the deposit for some twenty months was to be an investment and not merely a means towards an end; a temporary placing while he sought something permanent. It also runs counter to another principle frequently invoked: "Where of two innocent parties one must suffer, it should not be the one to whom no negligence can be imputed." In the instant case, why should the innocent ward of this court be in effect penalized for the benefit of a guardian and his bonding company? I find nothing in the law to warrant such action, and, therefore, I think the ruling of the auditing judge should be upheld.