Estate of Mary Lou Hazelbaker.

Argued October 19, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Edmund Pennell Hannum,* for appellant.

*C. Wilfred Conard* of *Conard & Middleton,* for appellee.

OPINION BY CUNNINGHAM, J., March 20, 1934:

The question here involved is whether the guardian of a minor should be surcharged, in the adjudication of his account, by reason of the loss of trust funds, resulting from the closing of a bank in which they were deposited. The auditing judge made the surcharge; the court below, in banc, sustained the guardian's exceptions to this action; and the ward has appealed.

The salient facts are these: The guardian was appointed, by decree of the orphans' court, on May 28, 1927, to receive the minor's share of the proceeds of the sale of certain real estate, when sold. He gave a corporate bond under a decree of July 19, 1929, received the fund, amounting to $1,272.80, on February 4, 1930, and deposited it in the Northern Central Trust Company, where it remained until March 25, 1931, when it was deposited in the Savings Fund Department of the County Trust Company, drawing interest at four per cent. In February, 1931, the minor had to undergo an operation and the guardian, under a decree of court dated June 17, 1931, paid $256.10 to defray the expense thereof. The County Trust Company closed its doors October 9, 1931; it is now in process of liquidation, and has paid one dividend of

ten per cent. The minor married in May, 1930, and came of age on October 27, 1931, twenty months after the funds had been received by the guardian. He testified he had knowledge of the bank's apparent soundness through its financial statements, and that his personal funds were deposited therein, as well as as those of his ward. When asked why he deposited the money in the savings account, he said, "I thought it was paying four per cent." When asked why he did not invest in legal securities, his answer was, "I thought that was a better way of handling it. I was getting a good rate of interest and the money was available in two years, and at any time they needed it."

The auditing judge surcharged the accountant with the balance of the deposit, because, in his opinion, the acts of the guardian amounted to the making of an illegal investment, and he and his surety were therefore required to stand the loss of the ward's estate. The court in banc, on the other hand, based its opinion primarily upon the theory that it was not an investment, but only a temporary deposit. The following extract from the majority opinion below adequately summarizes the argument for the guardian: "It was not a deposit for a fixed period of time, and not an investment, but, as was said in Law's Estate, 144 Pa. at p. 508, a 'temporary, provisional, or precautionary arrangement', and the time during which the deposit was expected to remain in this bank was only just about seven months. It has been held in ordinary cases that six months is not an unreasonable time to keep cash on hand to await a suitable investment, and here the guardian knew that he would be expected to make settlement with his ward in about that time. Furthermore, in view of the fact that the fund was in both banks about a year and a half, earning 4%, the minor having married, some of the fund being needed

for a surgical operation, and more might in these times, have been required for support or medical services, we cannot say the cash was unreasonably withheld from investment.''

We have given careful consideration to the facts and made an independent examination of the authorities. In view of all the circumstances, we have concluded that the surcharge was properly made by the auditing judge and that the exceptions thereto should have been dismissed. It is undoubtedly true that if the deposit was merely a temporary one, within the meaning of Law's Estate, 144 Pa. 499, 22 A. 831, the court in banc was justified in sustaining the exceptions. This concession, however, necessitates a careful examination into the facts of that case.

The guardian there received some $3,000 of the money of his ward on January 29, 1890, and immediately deposited it in the Bank of America. The deposit was made in a separate account, in the name of the guardian as such, and was evidenced by an entry of credit upon the books of the bank in the usual form. The guardian was in search of an investment, and the deposit was to remain only until he could find one. He was to receive three per cent interest upon the deposit, and was to give two weeks' notice before withdrawal. The bank failed on April 30, 1890. In determining whether the guardian was liable for the loss, our Supreme Court said (p. 506): ''A trustee will not be liable for the failure of a bank in which trust funds have been deposited, if he has suffered them to remain there only for a reasonable time; but if he allows them to lie there by way of investment, he will be liable to make good the loss.'' It then found, upon examination of the facts, that the deposit there under consideration fell into the category of a temporary deposit, saying (p. 508): ''In the present case, the money was placed in the bank, not as an

investment for any fixed period, but merely for safe-keeping, and at a small rate of interest until a suitable investment could be found. This was the express understanding of both parties at the time. The transaction was entered upon the books of the bank as a deposit merely. It was treated as a temporary, provisional, or precautionary arrangement."

Finally, it said: "A deposit, as we have said, is a temporary disposition of money for safekeeping; and it is upon this ground alone that the trustee is justified in depositing trust funds in bank, and it is upon the same ground that a deposit is distinguishable from an investment."

We think it clear, from an analysis of that case, that a deposit by a trustee in a bank is justifiable, under normal circumstances, only when it is a temporary measure, pending investment. We also think the application of this rule to the facts in the case at bar is fatal to the guardian's contention. It is conceded the deposit was not made as a temporary arrangement to last only until investment. The guardian was considering no other or further investment; he decided that the method which he employed was the best way of holding the fund, particularly in view of the fact that he was receiving the four per cent interest from the bank; to him it seemed a safe form in which to preserve the principal, and at the same time realize a return from it. Under the evidence, this is a fair statement of his position.

Was the deposit justified by the length of time which elapsed between the date the money was received and that upon which the ward attained her majority? We think not. Had the guardian received the money six or seven months before the time he would be compelled to account for it, a different question might have arisen. In such a case, it might be held that as a guardian may keep funds on deposit in a bank for a

short period while seeking a suitable investment, he may do the same if any investment otherwise made would have to be immediately liquidated. But such was not the case here, and it is at this point we feel the court below fell into error. Its conclusion was rested upon the fact that the deposit was made in March, 1931, and the minor came of age in October of that year. It overlooked the fact, however, that the fund was originally received in February, 1930, and was kept on deposit for the entire period of twenty months. We think it of little or no importance that the fund was transferred from one bank to another; the guardian might equally well have kept it in the County Trust Company for the whole time. When he transferred it to the latter institution, he was not converting a prior investment into cash in anticipation of the filing of his account; he was continuing his original policy of seeking security as well as income from a bank, rather than from a legal investment. He did not explain his action by saying that the time was too short for investment; and in view of the twenty months' period, such an explanation could not have been accepted. When viewed in this light, the duration of the deposit exceeded a proper period for a temporary deposit; and it is obvious, under the rule in Law's Estate, supra, that if a legal investment was available during such period, he was bound to make it or take the consequences.

Was there any investment available? We think there was. The guardian suggests that the period of his trust coincided with one of great depression, in which many investments proved of doubtful value. We are entirely sympathetic with this suggestion, and it should undoubtedly be taken into consideration in a proper case. The fact remains, however, that this guardian might at any time have invested the fund in a Liberty Bond, and it is obvious from the size of

the fund that it would have been sufficient for that purpose. In view of the fact that the legislature has declared such an investment to be a proper one for trust funds (see Section 41 (a) 1 of the Fiduciaries' Act of 1917, P. L. 447, 508), we do not feel that the guardian was at liberty to substitute his judgment for that of the legislature.

Did the financial situation of the minor require that the fund be kept liquid? Again, our answer is in the negative. There is no evidence that at the time the guardian received her entire estate the minor had any particular necessity for immediate funds. On the contrary, she married during the period of the guardianship and her husband was apparently able to provide for ordinary expenditures. The only demand against the fund was that necessitated by an operation in February, 1931. The payment of the sum there involved was authorized upon petitioning the court; and if the fund, or the greater part thereof, had been invested in a Liberty Bond, it could have been readily liquidated for that purpose. In this connection, reference may be made to Clark's Estate, 39 Pa. Superior Ct. 445. In that case, a guardian of three wards opened a bank account in his own name, as guardian, and deposited approximately $1,200 of his wards' money therein. The account bore interest at four per cent and was subject to check without notice. The bank failed, after the deposit had continued for eight months, and the guardian was sought to be surcharged for the loss. This court reversed a decree making the surcharge, but chiefly upon the ground there was no evidence showing the guardian might have made an investment of the money during the period of the deposit. However, this significant paragraph was added to the opinion (p. 450): "But there is another consideration which admonishes us to be cautious about surcharging this accountant. He had three wards,

and the amount of money remaining in the bank during the eight months in question was only about $1,200. If this belonged to one ward it might be argued with some force that there was negligence in leaving that sum in an open account in the bank. But when that sum is divided by three, it is not certain that a guardian ought to be adjudged guilty of negligence and liable to a surcharge when he only kept in bank about $400 for each ward as in case of sickness or accident he might be called upon to use the money.''

A similar situation would have arisen in the case at bar had the guardian made an investment of the larger part of the fund and kept the balance in bank, but we cannot say, under the facts here present, that any good reason has been given for keeping the whole of the fund on deposit.

It must be remembered that we are here dealing with the case of a statutory guardian, and that the investments such a guardian may make are prescribed by the Fiduciaries' Act. No question arises here of the proper construction of an authorization to invest contained in a deed or will, and we necessarily express no opinion upon the liabilities of fiduciaries, generally, as to making investments. Each case must stand upon its own facts.

In Glassburner's Estate, 40 Pa. Superior Ct. 134, a testator by his will appointed his brother, who was not an active business man, guardian of his son, and authorized him ''to invest such money belonging to my boy as may come into his hands in such manner as will, in his opinion, be for the best interests of the boy.'' The guardian in good faith deposited the money in a bank, on an open account, at four per cent interest. This court there held that the court below was in error in making a surcharge for the loss of the money resulting from the failure of the bank. It was said, however, (p. 136): ''If this were the

case of a statutory guardian, the opinion and conclusion of Judge HAWKINS would be very strong. But, in our opinion, having in view that the accountant was a testamentary guardian, vested with large discretion, and that he was a brother of the testator, a painter, not an active business man, and probably well known to the testator not to be an expert in financial matters, we do not think it would be just to apply to this guardian the strict rules pertaining to statutory guardians. The language of the will directed the guardian 'to invest such moneys belonging to my boy as may come into his hands in such manner as will, in his opinion, be for the best interests of the boy.' It would be difficult to choose language more appropriate to empower a guardian to use his own judgment as to what character of investments would be for the best interests of the boy. Judge HAWKINS only cites Law's App., 144 Pa. 499, but we do not understand that case to be a review of the management of a testamentary guardian.''

To summarize our conclusions: The guardian placed the entire estate of his ward in a bank, because he felt it to be a safe depository, and because it would there draw interest. He intended to make no other investment. There was, however, a proper investment available if he had so desired. Because of the length of time during which he held the fund, he was required to make a legal investment if he desired to have the protection afforded by the Fiduciaries' Act. He did not, however, see fit to take such action, and must therefore stand the loss. Whatever our sympathies may be for the guardian, we must keep in mind that the funds of the minor have been lost, and, in our opinion, we would be letting down the bars entirely too far if, under the circumstances here present, we did not sustain the surcharge.

We do not rest our conclusion upon any negligence

on the part of the guardian in selecting the particular bank in question as the institution in which to make the deposit. In our opinion, the question of negligence would enter into the case only if we had been required to consider whether the guardian acted properly in making a temporary deposit therein. This factor, however, becomes immaterial in a case where an investment should have been made. The bank may have been a proper depository, but the legislature has not seen fit to consider such a deposit a legal investment. As a former chief justice said in Taylor's Estate, 277 Pa. 518, 529, 121 A. 310, "The law has erected a guidepost for trustees to observe, reading 'Legal Investments,' and if, apparently, that warning is negligently ignored by a fiduciary ..... he cannot ...... escape responsibility by substituting 'supine negligence,' as the test, for the measure of care just indicated."

In Estate of John M. Evans, 7 Pa. Superior Ct. 142, this court affirmed a surcharge against a guardian who allowed the funds in his control to remain on deposit with a banking house for an undue length of time and without an effort to invest them. The deposit was not an investment in form, and was subject to withdrawal at any time. Its loss was occasioned by failure of the banking institution. Upon the authority of Law's Estate, it was held the surcharge was proper because the fund had been kept on deposit for an unreasonable length of time and without any effort having been made to seek an investment. This conclusion was reached despite the fact that the evidence showed the banking house was reputable and solvent, and that there was no bad faith on the part of the guardian. The opinion closes as follows (p. 145): "The loss that has befallen is due only to his ignorance of the duties imposed by the law upon guardians. While the reasons for the failure to invest are plaus-

ible, yet they are not sufficiently cogent to persuade us that the loss here disclosed should fall upon the minors rather than upon him whose lack of proper diligence and care has occasioned it."

We think this decision is directly applicable to the facts in the case at bar, and that a similar conclusion should here be reached.

The decree of May 25, 1933, sustaining the guardian's exceptions to the surcharge is reversed, and the record is remitted for further proceedings not inconsistent with this opinion. Accountant for costs.

BALDRIGE, J., dissents.