## Grossman's Estate

STEARNE, J., auditing judge.—

### Estate of Bernard Grossman

The guardian was appointed by decree of this court dated November 16, 1926, and authority was granted to join in a sale of certain real estate by decree dated December 28, 1926. He was ordered to enter security in the amount of $6,000. There were three minors interested and each was entitled to $866 of the proceeds of sale. We are here interested in but one of the minors, Bernard Grossman, and what happened to his share of the proceeds.

According to the notes of testimony taken at the audit and the admitted facts, the guardian deposited this fund in a saving account at the Central Trust & Savings Company on or about January 27, 1927, in his name as guardian for the minor. On October 6, 1931, the Central Trust & Savings Company closed its doors and the Secretary of Banking took possession of its assets. At the time the bank closed the record shows that there was on deposit therein the amount of $1,011.21 belonging to the late minor. Subsequently dividends were declared and received by the guardian, to wit, $101.12 on or about March 30, 1932, and $101.12 on or about December 1, 1932, aggregating $202.24. These payments received as dividends were later deposited in another saving account at the Sixth National Bank, in the name of the guardian. Later, on February 28, 1933, the saving account at the Sixth National Bank was put upon a restricted withdrawal basis. Subsequent to the last-mentioned date three further dividends were declared and paid by the Central Trust & Savings Company on account of the deposit remaining there, aggregating $303.36. These last-mentioned dividends were deposited by the guardian in a saving fund account at The Philadelphia Saving Fund Society in his name as guardian. On November 7, 1934, a dividend amounting to $37.85 was declared and received on the restricted account in the Sixth National Bank, and this dividend, less $8 which was retained by the surety company to pay one half of a premium on the guardian's bond then due, or $29.85, was also deposited by the guardian in the account at The Philadelphia Saving Fund Society, making a total of $333.21

deposited in said account. Of the original $866 received by the guardian and credited to the minor's account in January 1927 there now remains only $333.21, subject to adjustment for costs of administration, etc., available for present distribution.

The controversy revolves about the right of the guardian to deposit the minor's funds in saving fund accounts rather than investing them in legal securities. The investments which a guardian may make of his ward's funds are prescribed by the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 41, and it does not appear that deposits in saving fund accounts are included: Hazelbaker's Estate, 113 Pa. Superior Ct. 32, seems to control the present situation. There the facts were almost identical. The auditing judge made a surcharge, exceptions were filed on behalf of the guardian, the court en banc sustained the exceptions in an opinion by Gest, J. (in which I concurred), an appeal was taken, and the Superior Court reversed the lower court and reëstablished the surcharge. There, as here, it was testified that the guardian put the minor's funds in the bank where he kept his personal account. There the guardian was guilty of an unauthorized retention for a period of approximately 20 months. In the present case the period of retention has been in excess of 8 years, and there is no evidence that the guardian ever thought of or attempted to secure a suitable legal investment for the fund. In this case the fund has been involved in two successive bank failures, and what is now left of the late minor's estate is still on deposit in a savings bank.

The only excuse offered by the guardian in mitigation of his actions is that his counsel (not present counsel) and the bonding company (his surety) advised, or rather misadvised him that he had no authority to invest the fund, but was compelled under the law to deposit it as he did. He also defends his actions on the ground that the minor acquiesced in, or at least had knowledge of, what was going on. Neither of these excuses is sufficient to relieve him of liability. Ignorance of the law, either on his part or on the part of others upon whom he relied for advice, is not a legitimate defense; and the minor was not capable of acquiescence in the eyes of the law. The guardian evidently attempted to substitute his judgment for that of the legislature and, under the ruling as laid down in Hazelbaker's Estate, supra, he must be charged with the responsibility. I therefore have reached the conclusion, and so rule, that the guardian be surcharged with the full amount of the loss sustained.

There was some testimony taken with respect to the item appearing in the account under date of January 1, 1934, being "Cash (advance) . . . $200.00". It appears that in October 1933, after the minor attained his majority, the guardian paid him or his mother a sum of $200 for the purpose of enabling him to "open up a drug store"; and that on January 1, 1934, the guardian obtained from the late minor a judgment note to cover the indebtedness. Inasmuch as the note was signed by Bernard Grossman after he attained his majority and the money was actually received by him subsequent to his coming of age I will allow the credit to stand, and will not disturb the account in that respect. . . .

### Estate of Pauline Grossman

The present account was filed simultaneously with another similar account having to do with the estate of a brother of the said Pauline Grossman, his name being Bernard Grossman and he having attained his majority on August 26, 1932. . . .

This case differs from the other, however, in that here I am not inclined to allow the credit for $200 under date of January 1, 1934. The distinguishing feature is that in the case of Bernard Grossman the late minor had attained

full age before the loan was actually made and the note signed by him. In this case it develops that the loan was made (or, as the accountant put it, the advancement was made) to the minor or her mother in October 1933, and the late minor did not attain her majority until December 28th of that same year. It is significant to note that the guardian hesitated to secure the minor's note until January 1, 1934, after her birthday. The loan (or advancement) was made for the purpose of enabling the minor to "open up a drug store". Of course the guardian did not apply for leave of court, and, had he, it probably would have been declined for want of sufficiently good purpose. This item of credit, must, therefore, be stricken from the account. . . .

*William Sandberg*, for exceptant.

*Maurice J. Friedman* and *Lewis J. Beitchman*, contra.

LAMORELLE, P. J., March 27, 1935.—

### Estate of Pauline Grossman

As we all concur in the rulings of the learned auditing judge, what we here say is merely to emphasize rather than enlarge or elaborate.

The guardian deposited the entire fund received from a sale of real estate in a bank which was afterwards closed, and also deposited dividends paid by that bank in another bank, which latter bank is restricted as to withdrawals. He testified that the original deposit was made under advice of the attorney who represented him in the sale of the real estate, and also of an officer of the surety company who gave the bond. Neither of these witnesses was called for corroborative purposes. Without questioning his recollection of what occurred some 7 years ago, it is possible that the advice was given in view of the fact that the mother of the minor thought the money should be handed over to her; that is to say, a temporary deposit, rather than a permanent one in the nature of an investment, was the thought in mind. Be that as it may, advice of counsel to ignore or to refuse to follow a statutory regulation touching a guardian's duty, cannot, nor ought it to be considered as a successful defense. This guardian utterly failed in his duty as did his counsellors in their advice, if such advice related to permanent deposits in the savings department of a trust company exercising banking privileges.

What is so well said in Hazelbaker's Estate, 113 Pa. Superior Ct. 32, is peculiarly applicable to the facts in the instant case. And in answer to the exceptant's fervid argument about financial chaos, etc., it is well to remember that at no time was the guardian called upon to pay out income, that Liberty Bonds, other United States Government bonds and many municipal bonds offered excellent opportunity for investment, and that a fiduciary is not limited to mortgages.

So far as concerns the loan or advance of $200, for which the minor gave a note, during her minority, although she did not personally receive the money, it cannot be treated as a set-off to her claim, because the guardian dated the note on a day after she attained her majority, although the money was advanced by him while she was a minor. The learned auditing judge was clearly right in refusing to allow a credit.

All exceptions are accordingly dismissed, and the adjudication is confirmed absolutely.

### Estate of Bernard Grossman

What we have said in our opinion handed down this day in the Estate of Pauline Grossman, applies equally well to this case, except that the advance

534

of $200 was made to Bernard Grossman after he reached the age of 21, and no exception was filed to the ruling of the auditing judge that this credit should stand.

All exceptions are dismissed and the adjudication is confirmed absolutely.