## Braun's Estate

*Louis Sherman,* for exceptants.

*Walter Lee Sheppard,* contra.

BOLGER, J., December 17, 1937.—Exceptants complain of the failure of the auditing judge to surcharge the executrix for:

1. Retention of nonlegal investments over a long period of time.

2. A nonlegal investment; or, in the alternative,

3. For the conversion of such investment.

They aver also lack of prudence as well as of diligence and care, in fact supine neglect. They cite Taylor's Estate, 277 Pa. 518, Plate's Estate, 30 Dist. R. 902, Hart's Estate (No. 1), 203 Pa. 480, Kelch's Estate, 318 Pa. 296, and related cases.

In reply the accountant cites Detre's Estate, 273 Pa. 341, Bartol's Estate, 182 Pa. 407, and Dempster's Estate, 308 Pa. 153. An examination of the pertinent clauses of this holographic and inartistically drawn will at the outset will be helpful in determining the cause, and such examination should be made in the light of the decisions in Tyson's Estate, 191 Pa. 218, and Lippincott's Estate, 276 Pa. 283. These provisions are as follows:

"My Dear Wife Elizabeth shall superintend my business, finish up all the leather in process of finishing or otherwise owned by me and sell the same to the best advantage.

"All the goods, stock, machinery, tables, tools and so forth my Dear Wife shall dispose of to the best of her ability.

"I order and direct that the property 991 N. 7th Street, my present residence with all its contents, such as carpets, furniture, bedding, cooking utensils, gold and silverware, my personal effects and all the personal property contained in the house 991 N. 7th Street, my present residence, shall belong to my Dear Wife absolutely.

"My wife shall act as Executor and Trustee of my Estate, real and personal.

"All the net income of my Estate shall belong to my beloved wife Elizabeth during her natural life.

"In case it appears advantageous to my wife to dispose of any part of my personal or real estate she may do so and invest the proceeds to the best of her ability.

"After my wife's death the Integrity Title Insurance, Trust and Safe Deposit Co. situated at present at the Southwest Corner Fourth and Green Sts. shall dispose of my remaining properties, real and personal, except that portion of my Real and Personal Estate which I have hereinbefore already disposed of absolutely to my wife and divide the Net Proceeds in the following manner: . . ."

From this the auditing judge correctly found ". . . his (testator's) affection and solicitude for his wife is manifest, and his confidence in her ability is no less so". It is mindful of the language of Ashman, J., in Barker's Estate, 159 Pa. 518, the situation therein being the reverse of the present, the wife being testatrix and her widower executor-beneficiary. Judge Ashman said (p. 521):

"It is the will of a wife, and it begins by naming her husband as executor. From the start to the finish it shows an intent to put the conduct of the estate in his hands and to make it subject to his judgment. The first paragraph gives him 'full power to take charge of my estate and dispose of the same; both real and personal, at his discretion'. . . The will closes with an emphatic declaration of the entire confidence which the testatrix reposed in her husband. Expressions like these have made the statutes . . . a dead letter to this accountant. It is

doubtful whether in face of them he can be held amenable even to the rules of diligence which were applied to trustees before the acts were passed."

In quite the same tenor and with identical effect is the language of Morrison, J., in Glassburner's Estate, 40 Pa. Superior Ct. 134, at page 136, cited with approval in Hazelbaker's Estate, 113 Pa. Superior Ct. 32:

". . . having in view that the accountant was a testamentary guardian, vested with large discretion, and that he was a brother of the testator, a painter, not an active business man, and probably well known to the testator not to be an expert in financial matters, we do not think it would be just to apply to this guardian the strict rules pertaining to statutory guardians. The language of the will directed the guardian 'to invest such moneys belonging to my boy as may come into his hands in such manner as will, in his opinion, be for the best interests of the boy.' It would be difficult to choose language more appropriate to empower a guardian to use his own judgment as to what character of investments would be for the best interests of the boy."

Accordingly, the Superior Court sustained the lower court in its refusal to surcharge the guardian for depositing funds in a saving fund account in a bank which failed. We cannot and will not ignore these wise pronouncements.

We hold that the auditing judge was not in error in finding that it was the intention of the testator, in naming his wife as executrix and giving her the broad powers expressed in the will, that she should not be subjected to the strict responsibility involved in the rule laid down in Taylor's Estate, supra, and related cases.

The phraseology here employed is not sufficient in ordinary conditions to grant an unrestricted power to invest. However, reading the will from its four corners, and under all the circumstances of this particular will, the real intent is disclosed that the widow-trustee had an unlimited discretion as to investment, and with the same effect as if unlimited power of investment was given to her by express terms.

Testator gave the largest interest in his estate to his wife, the primary object of his bounty. In addition, he placed in her hands full control, certainly full discretion over the handling of the estate. She personally owned investments in the same companies as those she received and retained as executrix. The language of the paragraph appointing her executrix and trustee is very broad; it goes far beyond the restrictive power placed on it by exceptants. Analyzing it, we find two elements of authority:

1. "In case it appears advantageous to my wife to dispose of any part of my personal or real estate she may do so;" and

2. "Invest the proceeds to the best of her ability."

Testator emphasized not only his wife's judgment of the advantage or lack of it in selling assets, but also he trusted her ability in reinvesting the proceeds. Now, she is dead, and surcharge against her estate is sought by the remaindermen, to whom the estate comes as a windfall, for failure to sell nonlegal investments, for lack of diligence, for one investment of a nonlegal character, or, in the alternative, for what they claimed amounts to embezzlement or conversion. Substantial loss is claimed in only one respect—failure to sell Integrity Trust Company; the other investments show merely nominal loss.

In the light of the language quoted from the above-cited decisions, this court will give no sympathy or comfort to the exceptants. On the contrary, we concur in the findings of the auditing judge that the language of the will contained adequate power and authority in the circumstances to warrant the actions of the accountant and to sustain the credits claimed. Testator manifests the intent to put the "conduct of the estate in" her "hands and to make it subject to" her "judgment". It was his property and he knew and we must give him credit for knowing what he was doing.

As to the executrix's apparent retention of Lehigh Power Securities Corporation bonds, the auditing judge ruled correctly. The executrix was at an advanced age,

enfeebled and no longer able to competently handle the assets. She thereupon turned them over, together with her own individual assets, to the Integrity Trust Company as her agent. This was intelligently done and in good faith. The evidence discloses that in so doing she erroneously, but with what we construe as good faith, and innocently failed to segregate these bonds from her own assets. The receipt in typewritten form was apparently drafted by a clerk in the trust company. He was not presented as a witness; however, it is clear that the executrix kept her own record of both income and principal prior to engaging the trust company as her agent. From it could have been obtained an accurate check of the transactions concerned immediately succeeding her death and prior to the drawing and filing of the present account. Such was done before the audit and it might just as well have been done theretofore. The result of this check evidences that the mistake was one largely of bookkeeping, as stated in the adjudication. There should not have been at any time any difficulty in tracing the whole transaction and identifying the bonds as those of testator's estate.

Certainly no conclusion can be drawn that the executrix acted in bad faith. The sale of the bonds subsequently by the Integrity Trust Company nominally as executor of her individual estate was, nevertheless, in substance and in fact, in compliance with its duty as succeeding executor under testator's will. Construed in its proper light, it absolves the widow from any suspicion of wrongdoing.

The exceptions are dismissed and the adjudication is confirmed absolutely.